Henry LeBel *vs.* Anna B. McCoy & another.

Essex. May 6, 1943. — June 28, 1943.

Present: Field, C.J., Donahue, Lummus, Dolan, & Cox, JJ.

*Contract,* Construction, Consideration, Modification, Performance and breach, Building contract.

A written building contract, specifying a total price but no time for the payment thereof to the builder, was not indefinite as to the time of payment: it imported that he should not be entitled to any payment until his work should have been completed.

A promise by an owner, subsequent to the making of a building contract, to turn over to the builder certain payments, as received by the owner during the progress of the work from the mortgagee under a construction mortgage, was without consideration and was not binding upon the owner where the building contract imported that the builder should receive no payment from the owner until completion of his work.

A building contractor's intentional installation of a wooden beam as one of the main supports of a house instead of a steel I-beam as required by the building contract precluded his recovering the value of his work and materials from the owner upon quantum meruit, although the wooden beam was sufficient and its use was good construction "and workmanlike" and the work done by the builder was good.

CONTRACT. Writ in the District Court of Southern Essex dated September 11, 1939.

One of the counts in the declaration was in substance to recover $1,520 as money which the plaintiff alleged the defendants should have paid him as money received from the mortgagee under a construction mortgage; and another count was to recover for work and materials on quantum meruit.

Upon removal to the Superior Court, the action was referred to an auditor whose findings were to be final. Among his findings were the following: "LeBel at the time he stopped working on September 2, 1939, had furnished labor and materials into the McCoy house for somewhat more than . . . $5,320 which is the total of the first three

payments received by the McCoys from the bank. LeBel had been paid the first two payments. I find that the failure of the McCoys to pay over to LeBel the third payment was a breach of their contract and that they should have paid over to him the sum of . . . $1,520 when they received the third payment from the bank. . . . [The defendants were entitled to credits totalling $80] and after said credit has been given I find that there is due to LeBel from the McCoys the sum of . . . $1,440 with interest."

A motion by the plaintiff for judgment "in accordance with the auditor's report" was allowed by *Warner*, J., and the defendants appealed.

In this court the case was submitted on briefs.

*P. L. Keenan*, for the defendants.

*G. J. Tauro & J. Golant*, for the plaintiff.

LUMMUS, J. This is an action upon a building contract brought by a builder against the female defendant and her husband. It was referred to an auditor whose findings of fact were to be final. The facts appear in his report and supplemental report. Judgment was ordered for the plaintiff on the reports, and the defendants appealed.

On January 25, 1939, the defendants entered into a written contract with the plaintiff whereby the latter was to build for the defendants a house and garage in Marblehead for $7,600, according to certain plans and specifications. No time for payment was fixed. Work was started in May, 1939. On June 14, 1939, the defendants obtained a construction mortgage from a bank. The bank was to make payments as follows: $2,280 when the house was boarded in and the chimney was built and flashed; $1,520 when the house was finished outside and plastered; $1,520 when the standing finish was on; $1,520 when the house was completed and ready for occupancy; and the remainder, amounting to $760, forty-one days thereafter. The first payment of $2,280 was turned over to the plaintiff as soon as it was received on June 14, 1939. "On this same day Gorham [who appeared to represent LeBel] explained to the McCoys the mechanics of a construction mortgage and

he told them that they must turn the future payments as they received them from the bank over to LeBel and the McCoys agreed to do it." Later the second payment of $1,520 was received and paid over to the plaintiff.

When the third payment of $1,520 was received, the defendants refused to pay it over to the plaintiff. They "did not refuse to turn the check over because of any complaint with any particular portion of LeBel's work." The auditor found "that the failure by the McCoys to turn the third bank payment over to LeBel was unreasonable and that it was a breach of their oral contract with LeBel to do so. The refusal of the McCoys to turn the third payment over to LeBel caused LeBel to have to cease work on the house on Saturday, September 2, 1939." On September 7, 1939, the defendants notified the plaintiff in writing that unless he commenced work again on or before September 18, 1939, they would hire another contractor to complete the work and hold the plaintiff liable. The plaintiff did no more work, but began this action on September 11, 1939. The auditor found that the defendants owed the plaintiff $1,440 with interest.

The plans called for a steel I-beam as one of the main supports. That would have cost more than the six by eight wooden beam which the plaintiff actually used. The auditor finds: "LeBel did purposely fail to furnish the steel I-beam which was called for in the plans referred to in the written contract of January 25, 1939." He did not discuss the matter with the defendants, and the auditor doubts whether they knew the fact until after this litigation was started. They never waived their right to a steel beam, which would carry more weight than the wooden beam. But the auditor found that the wooden beam was sufficient, and that its use was good construction in such a house. He found "that the work done by LeBel was good and workmanlike." But he added: "I make this finding with the one qualification bearing upon the use of the wooden beam instead of the steel beam. I find that what he did in using the wooden beam was good and workmanlike but as I have set forth hereinbefore I do find that he purposely

refrained from using the steel beam as called for in the blue print plans."

The auditor found that "the oral agreement [to turn over to the plaintiff the payments as received from the bank] did not arise from the refusal of either party to fulfil so much of the written contract as remained executory . . . [but] arose from the indefiniteness of the written agreement as to how the $7,600 was to be paid." The auditor found: "The manner in which the $7,600 was to be paid was amplified after the written contract between the parties. But, the written contract was never waived or rescinded."

The written contract was not indefinite as to the time of payment. Under it the plaintiff was not entitled to any payment until the completion of his work. *Stark* v. *Parker,* 2 Pick. 267. *Davis* v. *Maxwell,* 12 Met. 286, 290. *Rich* v. *Arancio,* 277 Mass. 310. *Jackson* v. *Boston Safe Deposit & Trust Co.* 310 Mass. 593, 595. Williston, Contracts (Rev. ed. 1936) § 830, especially note 7. Am. Law Inst. Restatement: Contracts, § 270. *Stewart* v. *Newbury,* 220 N. Y. 379; 2 Am. L. R. 519, and note. *Coburn* v. *Hartford,* 38 Conn. 290. *Cunningham Lumber Co.* v. *New York, New Haven & Hartford Railroad,* 77 Conn. 628. *Poland* v. *Thomaston Face & Ornamental Brick Co.* 100 Maine, 133. *Thompson* v. *Phelan,* 22 N. H. 339. This is not a case where a builder gave up his right to stop work and pay damages in consideration of a promise to pay him more or differently if he would finish the job. *Parrot* v. *Mexican Central Railway,* 207 Mass. 184, 194, 195. *Tashjian* v. *Karp,* 277 Mass. 42, 46. Here the plaintiff furnished no consideration for the oral promise of the defendants to turn over to the plaintiff the bank payments when received. Hence the defendants were not in default when they refused to do so.

The plaintiff intentionally failed to perform his contract in the important matter of the steel I-beam. That failure prevents him from recovering. *Sipley* v. *Stickney,* 190 Mass. 43. *Lynch* v. *Culhane,* 237 Mass. 172. *Smedley* v. *Walden,* 246 Mass. 393, 400. *Divito* v. *Uto,* 253 Mass. 239, 243.

*Hub Construction Co.* v. *Dudley Wood Works Co.* 274 Mass. 493, 496. *Glazer* v. *Schwartz,* 276 Mass. 54, 57. *Andre* v. *Maguire,* 305 Mass. 515, 516. *Russo* v. *Charles I. Hosmer, Inc.* 312 Mass. 231, 233.

*Judgment for the defendants.*