LISA THORSON *vs.* HERB MANDELL & another.[1]

Suffolk. March 9, 1988. — July 7, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Workmen's Compensation Act,* To whom act applies, Failure to obtain insurance. *Practice, Civil,* Instructions to jury. *Contract,* Employment. *Negligence,* One owning or controlling real estate, Duty to warn.

In a civil action in which the evidence warranted a finding that the plaintiff was an employee of the defendant injured in circumstances imposing tort liability on the defendant without fault under G. L. c. 152, §§ 66 & 67, for his failure to maintain workers' compensation insurance or quality as a self-insurer, no jury instruction specifically dealing with the issue whether there was a "contract of hire" between the parties within the meaning of the definition of employee set forth in G. L. c. 152 was required, where the issue was not contested at trial. [746-747]

A landowner that merely rented its auditorium in a reasonably safe condition to a theatrical producer was not liable for serious injuries sustained by an actress who fell on the premises while attempting a backflip during the rehearsal of a play, where the landowner had assumed no duties to the actress nor had undertaken any services to her which it should have seen as necessary for her protection [747-748]; where the landowner had no duty to the actress to investigate the producer's competence [748-749]; and where the landowner owed no duty to the actress to warn of the obvious dangers of attempting an unfamiliar backflip maneuver on a hardwood floor [749].

CIVIL ACTION commenced in the Superior Court Department on January 18, 1982.

The case was tried before *John Paul Sullivan,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*David D. Dowd (Richard T. Corbett* with him) for Boston Young Women's Christian Association.

*John P. Ryan* for Herb Mandell.

---

[1] Boston Young Women's Christian Association.

*R. Daniel Prentiss* of Rhode Island for the plaintiff.

*Nonnie S. Burnes & Marc Goodheart,* for Federated Dorchester Neighborhood Houses & others, amici curiae, submitted a brief.

WILKINS, J. Lisa Thorson was seriously injured when she fell on the premises of the defendant Boston Young Women's Christian Association (YWCA) while attempting a backflip with her dance partner during a rehearsal of a play that the defendant Mandell was producing and directing. A jury returned a substantial verdict against each defendant. We allowed the YWCA's application for direct appellate review, thereby bringing Mandell's appeal here as well. We affirm the judgment against Mandell, but reverse the judgment against the YWCA and direct the entry of a judgment in its favor.

In January, 1979, Thorson, then in her last semester at the Boston Conservatory of Music, obtained a lead role in a musical comedy that the Boston Comedy Playhouse intended to produce. Mandell was the sole proprietor of the Boston Comedy Playhouse. He and Thorson executed an agreement concerning her services. Mandell did not have workers' compensation insurance coverage, nor was he a licensed self-insurer. See G. L. c. 152, § 25A (2), as amended through St. 1972, c. 764.

Rehearsals were held at several locations, including the auditorium at the YWCA on Clarendon Street in Boston. During a rehearsal at the YWCA on the evening of February 18, 1979, Mandell directed the choreographer Agnes Bonaventura to rehearse a dance sequence on the floor of the auditorium. Either Bonaventura or Thorson's dance partner suggested that a backflip be incorporated into the routine. Thorson was reluctant to attempt the flip but ultimately agreed. For our purposes, we may assume that the choreographer negligently supervised the procedure. On the first attempt at the backflip, Thorson fell on the hard wood floor and became permanently paralyzed in significant respects because of an injury to her spinal cord.

The YWCA allowed Mandell to use the auditorium during certain evening hours, and he paid for the privilege through a prior user of the auditorium from whom Mandell in effect was "subleasing" the right to use the auditorium. There was evidence

that the YWCA had a policy against the performance of gymnastics unsupervised by a trained gymnast and did not allow gymnastics to be performed in the auditorium. The business manager of the YWCA at the time of the accident testified that he tried to get a rough idea of what users of the auditorium would be doing, but had not linked theater to gymnastics.

1. The jury returned a special verdict finding Mandell liable on three separate theories. The judgment in Thorson's favor against Mandell must be affirmed if any one of the three bases of liability can be sustained on appeal. We conclude that the jury properly found Mandell liable for failure to comply with the requirement of the workers' compensation insurance act that he either provide such insurance or become a licensed self-insurer. We need not, therefore, discuss Mandell's claim that he could not be liable on the basis of his own alleged negligence or on the basis of the negligence of his alleged employee Bonaventura.

An employer is liable in tort to an employee without proof of negligence if the employer is required to maintain workers' compensation insurance and fails to do so (or fails to become a licensed self-insurer) and the employee sustains an injury arising out of and in the course of the employment. G. L. c. 152, §§ 66, 67 (1986 ed.). *Peters* v. *Michienzi,* 385 Mass. 533, 534-535 (1982). Mandell does not argue that the evidence did not warrant a finding that Thorson was an employee injured in circumstances imposing tort liability on him without fault under G. L. c. 152. He claims rather that the judge failed to instruct the jury that, to establish her status as an employee under G. L. c. 152, Thorson had to prove that there was a contract of hire between Mandell and her. With exceptions not here relevant, an employee was defined in the workers' compensation act in effect at the time of the injury as "every person in the service of another under any contract of hire, express or implied, oral or written." G. L. c. 152, § 1 (4), an amended through St. 1972, c. 374, § 1. See now G. L. c. 152, § 1 (4) (1986 ed.), where the same words are used.

The question whether there was a contract of hire between Mandell and Thorson was not a contested issue at trial. Mandell

testified on cross-examination that he "had an agreement with Lisa Thorson concerning her work as an actress for [his company]." He testified further that the agreement was in writing and that a copy of it was an exhibit in the case. There was no evidence more favorable to Mandell on the issue whether there was a contract between Thorson and him. He is bound by his testimony as to the existence of the written agreement, and we conclude, as a matter of law, that the agreement was a contract of hire. See *Gaynor* v. *Laverdure,* 362 Mass. 828, 841 (1973), and cases cited. See also *Cameron* v. *State Theatre Co.*, 256 Mass. 466, 468 (1926).

The issue that was in contest at trial, and presented a jury question, was whether Mandell had the right to direct and control Thorson in the detail of her work. If he did, she was an employee for workers' compensation purposes and was not an independent contractor. See *McDermott's Case,* 283 Mass. 74, 76-77 (1933). Mandell filed requested instructions on this issue, and the judge charged the jury on it. Mandell did not file any request concerning a contract of hire, and the judge did not charge the jury on the question. Only after the judge had charged the jury did Mandell's counsel raise the point. There was, in the circumstances, no jury issue concerning a contract of hire that was separate from the issue of Mandell's right to control. No charge specifically dealing with a contract of hire was required.

2. The evidence, viewed in the plaintiff's favor according to the usual standard (see *Poirier* v. *Plymouth,* 374 Mass. 206, 212 [1978]), did not warrant a verdict against the YWCA.[2] A property owner has a duty to use reasonable care to maintain its property in a reasonably safe condition. *Mounsey* v. *Ellard,* 363 Mass. 693, 707 (1973). Thorson makes no claim before us, however, that the YWCA's auditorium was not in reason-

---

[2] We have no complaint that the judge submitted the case against the YWCA to the jury rather than direct a verdict because it is appropriate to send a case to the jury unless a deficiency in a plaintiff's proof is unquestionably manifest. See *Smith* v. *Ariens Co.,* 375 Mass. 620, 627-628 (1978). We conclude, however, that the YWCA's motion for a judgment notwithstanding the verdict should have been allowed.

ably safe condition. Nor does she claim that the YWCA did anything to cause her injury. She relies on two theories: (1) the YWCA violated a duty it owed to Thorson by negligently failing to enforce its policy against gymnastics in the auditorium, and (2) the YWCA violated its duty not to subject Thorson to an unreasonable risk of harm by its failure to inquire into the renter's qualifications and its failure to inform Mandell of its policy against gymnastics in the auditorium.

Thorson's first theory is based on an asserted applicability of the "good Samaritan" principles expressed in Restatement (Second) of Torts § 323 (1965),[3] and recognized in *Mullins* v. *Pine Manor College,* 389 Mass. 47, 52-53 (1983), and earlier cases. If a person voluntarily assumes a duty or undertakes to render services to another that should have been seen as necessary for her protection, that person may be liable for harm caused because of the negligent performance of his undertaking. The YWCA did not assume any duty to Thorson nor did it undertake to render any services to her which the YWCA should have recognized as necessary for her protection. The creation of a policy against gymnastics in the auditorium was not an undertaking to render services for the protection of its users.

Thorson's second theory of liability is that the YWCA violated its duty not to subject her to an unreasonable risk of harm. See *Upham* v. *Chateau de Ville Dinner Theatre, Inc.,* 380 Mass. 350, 353 (1980); *Young* v. *Garwacki,* 380 Mass. 162, 169 (1980); *Mounsey* v. *Ellard, supra.* We find no support in cases or in logic for the principle that the YWCA had a legal duty to investigate the competence of Mandell and his staff. To place such a duty on a landowner in the YWCA's position would be unreasonably onerous, particularly where

---

[3] "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

there is no evidence that would have put the YWCA on notice of any inadequacies of Mandell and his staff.

We come then to the question of the YWCA's failure to inform Mandell of its policy against gymnastics in the auditorium. The parties spar over the question whether the dance procedure that was being attempted when Thorson was injured is properly called gymnastics. The answer probably is that it is not, but that it entails risks that are similar to those encountered in gymnastics. We need not resolve the issue.

There is no duty to warn of dangers obvious to persons of average intelligence. See *Young* v. *Atlantic Richfield Co.,* 400 Mass. 837, 842 (1987); *id.* at 844 (Wilkins, J., concurring); *Polak* v. *Whitney,* 21 Mass. App. Ct. 349, 353 (1985). The dangers of attempting an unfamiliar backflip on a hard wood floor are obvious as a matter of law. In this case, in any event, the evidence is clear that Thorson and others were aware of the risk. See *Hannon* v. *Hayes-Bickford Lunch Sys., Inc.,* 336 Mass. 268, 274 (1957).

The condition that caused Thorson's injury was not created by the YWCA. That condition was created by Mandell and other people participating in the rehearsal. The risk was inherent in the dance step attempted and obvious to the participants. Even if we assume in Thorson's favor the doubtful propositions that the YWCA reasonably should have known that gymnastic-like dance procedures would be involved in the rehearsal of a musical comedy and that the YWCA's policy against gymnastics in its auditorium applied to such procedures,[4] the YWCA had no duty to warn against obvious risks.

3. The judgment in favor of Thorson against Herb Mandell is affirmed. The judgment against the Boston Young Women's Christian Association is vacated, and judgment shall be entered in its favor.

*So ordered.*

---

[4] There is no reason to perform gymnastics in an auditorium when a gymnasium is available. A policy to that effect makes sense. It is far from clear, however, that a landowner with such a policy must at its peril determine that a dance maneuver that it knows is ultimately intended to be performed on a stage comes within that policy.