## Robert L. Cottam *vs.* CVS Pharmacy.

Middlesex. October 1, 2001. - March 14, 2002.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Negligence,* Duty to warn, Pharmacy. *Pharmacy. Witness,* Expert. *Evidence,* Relevancy and materiality, Settlement offer.

This court concluded that a pharmacy has no duty to warn a customer of the potential side effects of the prescription drugs it dispenses, where the pharmacy has no specific knowledge of an increased danger to a particular customer. [319-323]

Although a pharmacy's contention on appeal, that the evidence at a civil trial was insufficient to establish its voluntary assumption of any duty to warn a customer of all potential side effects of a prescription drug it dispensed, was not presented at trial and the issue was waived, this court, because of the importance of the issue and the fact that the issue had been fully briefed, addressed the issue and concluded that, even had the argument been raised below, the pharmacy's contention would have been unavailing, where, since the customer could reasonably have interpreted the warning form provided by the pharmacy as a complete and comprehensive list of all known side effects, it would be appropriate to impose on the pharmacy a duty commensurate with what it appeared to have undertaken. [323-326]

Expert testimony was not required to establish the scope and breach of the duty of a pharmacy to warn a customer of the potential side effects of the prescription drugs it dispensed, where a commonsense determination regarding the understanding of an ordinary, reasonably prudent person was needed and could properly be left to the jury. [326]

At a civil trial, the judge did not abuse her discretion in excluding a pharmacy's proposed evidence that a customer of the pharmacy, who failed to heed a warning about a medical condition that could result from a prescription drug dispensed by the pharmacy, continued to smoke cigarettes despite the warnings on cigarette packages, where the pharmacy's proposed evidence was too remote from the warning at issue to be relevant. [326-327]

In the circumstances of a civil case, the judge's admission of a prior settlement, not to prove liability or the amount of a claim, but to show bias against a party, was not an abuse of discretion. [327-328]

Civil action commenced in the Superior Court Department on June 20, 1995.

The case was tried before *Regina L. Quinlan,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kenneth A. Cohen* (*U. Gwyn Williams* with him) for the defendant.

*Ned C. Lofton* for the plaintiff.

COWIN, J. We address the issue whether a pharmacy has a duty to warn its customers of the potential side effects of the prescription drugs it dispenses. The plaintiff, Robert L. Cottam, suffered permanent injury when he failed to seek timely medical attention for a side effect he experienced after taking the prescription drug Trazodone. He had obtained the drug at a CVS Pharmacy (CVS). Cottam filed a complaint in the Superior Court alleging that CVS was negligent in failing to warn him of the side effect and its seriousness. Cottam also claimed negligence in failing to warn by his prescribing physician, Dr. Farrokh Khajavi, and by his therapist, Sheila McHatton. In its answer, CVS denied any negligence and asserted a number of affirmative defenses, including Cottam's own contributory negligence. Both Dr. Khajavi and McHatton settled with Cottam before trial. A jury found CVS fifty-one per cent negligent and Cottam forty-nine per cent negligent, and awarded Cottam damages (after reduction for comparative negligence) in the amount of $357,000. CVS filed a timely appeal, and we transferred the case here on our own motion.

On appeal, CVS argues that, as a matter of law, it does not have a duty to warn its customers of possible side effects associated with prescription drugs, and that CVS did not assume a duty to warn its customers of all side effects by warning them of some side effects. In the alternative, CVS argues that, even if it has a duty to warn, the plaintiff must establish the scope and breach of the duty of a pharmacist by expert testimony, and that the plaintiff did not present such expert testimony at trial. CVS also claims that two evidentiary rulings by the trial judge each constituted reversible error: (1) the judge improperly prohibited CVS from rebutting the presumption that Cottam would have heeded a warning if given; and (2) the judge erred in admitting evidence of Cottam's prior settlement of his claim against his doctor. We affirm.

1. *Facts.* We summarize the facts the jury could have found.

In May of 1994, CVS implemented a computer system designed to provide its customers with written information about the risks and side effects of prescription drugs. The computer produced this information in one of two ways: a short, condensed form (short form) or a longer and more inclusive form (long form). Although CVS's computers automatically generated the short form unless the computer operator hit a key to print the long form, CVS's corporate policy required its pharmacists to distribute the long form when filling new prescriptions. CVS policy also required its pharmacists to review the information on both the long and short forms with the customer.

In March of 1994, Cottam was admitted to Boston Regional Medical Center for treatment for depression. Dr. Khajavi, the psychiatrist who treated Cottam, prescribed the prescription drug Trazodone. Dr. Khajavi instructed Cottam to continue taking the drug on his release from the hospital. Cottam filled his prescription for Trazodone at the CVS Pharmacy in Reading on August 16, 1994. At trial, Cottam testified that the pharmacist, Barbara Swanson, gave him only the short form warning, which provided:

> "POSSIBLE SIDE EFFECTS: Commonly: drowsiness. Very unlikely, but report: Dizziness, fainting, blood in urine, heart problems, breathing problems."

He also testified that the pharmacist discussed the medication with him, but that the sole warning she provided was that the drug may cause drowsiness. Swanson testified that she had given Cottam the long form warning, which included a warning about the risk of priapism, defined as an erection that is persistent, not produced by sexual stimulation and not relieved by orgasm. Specifically, the long form included the following: "SIDE EFFECTS: . . . Notify your doctor if you develop . . . painful erections . . . ." The manufacturer's package insert, which Cottam also did not receive (but which it was not CVS's corporate policy to distribute) read:

> "WARNINGS: TRAZODONE HAS BEEN ASSOCI-
> ATED WITH THE OCCURRENCE OF PRIAPISM.
> IN APPROXIMATELY 1/3 OF THE CASES RE-

PORTED, SURGICAL INTERVENTION WAS REQUIRED AND, IN A PORTION OF THESE CASES, PERMANENT IMPAIRMENT OF EREC-TILE FUNCTION OR IMPOTENCE RESULTED. MALE PATIENTS WITH PROLONGED OR INAP-PROPRIATE ERECTIONS SHOULD IMMEDI-ATELY DISCONTINUE THE DRUG AND CON-SULT THEIR PHYSICIAN."

Although this "warning" was the only "warning" in all capitalized letters in the package insert, priapism was not listed as a side effect, but as one of numerous adverse reactions for which "the causal relation has neither been confirmed nor refuted." Swanson admitted that she did not orally advise Cottam about the risk of priapism. Dr. Khajavi testified that he had warned Cottam that priapism was a potential side effect before prescribing the medication.

Cottam took his first dose of Trazodone at night before bed and awoke the next morning with an erection that persisted throughout the day. The erection became uncomfortable later that evening. Cottam did not contact his doctor, deciding instead to wait until the following day when he had a previously scheduled appointment with his primary care physician. He took his second dose of Trazodone before bed that evening.

Cottam attended the appointment with his primary care physician the following morning, August 18, 1994. On learning of Cottam's condition, the physician sent him immediately to a urologist. The urologist diagnosed Cottam's condition as priapism and immediately admitted him to New England Memorial Hospital to undergo emergency surgery. Because Cottam had waited approximately thirty hours before seeking medical attention, the surgery left him permanently impotent. Ideally, Cottam should have sought medical attention within six hours. Cottam claimed that he would have sought medical attention earlier had he been informed that priapism is a potential and serious side effect of Trazodone.

2. *A pharmacy's duty to warn in general.* Cottam argues that the issues of the pharmacy's duty to warn and the extent of that duty are not properly before this court because CVS defended

the case on a different theory. CVS's basic position, as demonstrated by its request for jury instructions, motion for a directed verdict, and motion for judgment notwithstanding the verdict, was that to the extent it had assumed any duty, it had fulfilled it, and that the plaintiff had not met his burden of proving a breach of the duty by expert testimony or otherwise. CVS did not draw the judge's attention to the issues whether a duty existed and if so, to what extent. Having failed to raise these issues below, CVS cannot assert them now. Nevertheless, these issues were fully briefed by the parties and are likely to arise in other cases. Thus, we exercise our discretion and discuss the issues of duty and the scope of the duty that has been assumed. See *Clark* v. *Rowe*, 428 Mass. 339, 341 (1998) (court will review claim not properly preserved where issue is unanswered in Commonwealth, is likely to arise again, and has been fully briefed by parties); *McSweeney* v. *Cambridge*, 422 Mass. 648, 653 (1996) (court reviewed claim not properly preserved where issue was of importance to public).

To recover for negligence, a plaintiff must show "the existence of an act or omission in violation of a . . . duty owed to the plaintiff[s] by the defendant." *Dinsky* v. *Framingham*, 386 Mass. 801, 804 (1982). See *Davis* v. *Westwood Group*, 420 Mass. 739, 742 (1995). The existence of a duty is a question of law to be resolved by the judge. *Id.* at 743, and cases cited. In deciding whether a particular defendant has a duty in the circumstances, "we look to existing social values and customs, as well as to appropriate social policy." *Id.* See *O'Sullivan* v. *Shaw*, 431 Mass. 201, 203 (2000).

Although a pharmacy clearly has the duty to fill prescriptions correctly, see *Andreottala* v. *Gaeta*, 260 Mass. 105, 109 (1927); *Nesci* v. *Angelo*, 249 Mass. 508, 511 (1924), we have not addressed the issue whether a pharmacy has a duty to warn its customers of the risks and side effects of the drugs it dispenses. A number of jurisdictions have addressed the issue, and the overwhelming majority hold that in general, a pharmacy has no duty to warn its customers of side effects.[1] We similarly hold

---

[1] See, e.g., *Pysz* v. *Henry's Drug Store*, 457 So. 2d 561 (Fla. Dist. Ct. App. 1984); *Walker* v. *Jack Eckerd Corp.*, 209 Ga. App. 517 (1993); *Fakhouri* v.

that, generally, a pharmacy has no duty to warn its customers of the side effects of prescription drugs.

Other jurisdictions have reached this result by extending to pharmacies the "learned intermediary doctrine," a rule commonly applied to drug manufacturers. See note 1, *supra.* The doctrine is an exception to the general rule that a manufacturer or retailer of an unavoidably dangerous product must directly warn all foreseeable consumers of the dangers of its product. See *MacDonald* v. *Ortho Pharm. Corp.*, 394 Mass. 131, 135, cert. denied, 474 U.S. 920 (1985), quoting *H.P. Hood & Sons* v. *Ford Motor Co.*, 370 Mass. 69, 75 (1976). The learned intermediary doctrine in this context provides that "a prescription drug manufacturer's duty to warn of dangers associated with its product runs only to the physician; it is the physician's duty to warn the ultimate consumer." *McKee* v. *American Home Prods. Corp.*, 113 Wash. 2d 701, 709 (1989). The rationale for the doctrine is that physicians have the duty to inform themselves about the drug and warn their patients as they deem necessary. Physicians, after considering the history and needs of their patients and the qualities of the drug, are required to inform their patients of those side effects they determine are necessary and relevant for patients to know in making an informed decision. *Id.* Requiring the manufacturer to provide warnings directly to the consumer would interfere with the doctor-patient relationship. *Id.* at 711.

In *McKee* v. *American Home Prods. Corp.*, *supra* at 711, the Supreme Court of Washington concluded that the reasons for applying the learned intermediary doctrine to drug manufacturers apply with equal force to pharmacies. In both instances, the physician is in a better position to decide the information that is most pertinent to each particular patient because the physician has superior knowledge of the patient's medical history and unique condition. *Id.*

*Taylor*, 248 Ill. App. 3d 328 (1993); *Nichols* v. *Central Merchandise, Inc.*, 16 Kan. App. 2d 65 (1991); *Adkins* v. *Mong*, 168 Mich. App. 726 (1988); *Stebbins* v. *Concord Wrigley Drugs, Inc.*, 164 Mich. App. 204, 218 (1987); *Batiste* v. *American Home Prods. Corp.*, 32 N.C. App. 1 (1977); *Coyle* v. *Richardson-Merrell, Inc.*, 526 Pa. 208 (1991); *Morgan* v. *Wal-Mart Stores, Inc.*, 30 S.W.3d 455 (Tex. Ct. App. 2000); *McKee* v. *American Home Prods. Corp.*, 113 Wash. 2d 701 (1989).

Other jurisdictions concur with the *McKee* reasoning, and enumerate additional policy reasons for the extension of the learned intermediary doctrine. *Leesley* v. *West*, 165 Ill. App. 3d 135 (1988), cautioned that imposing a duty to warn would place too heavy a burden on pharmacists by requiring that they "retai[n] and catalogu[e] every document received to be certain each is distributed with the appropriate drug." *Id.* at 142. In *Morgan* v. *Wal-Mart Stores, Inc.*, 30 S.W.3d 455 (Tex. Ct. App. 2000), the court was concerned that requiring the pharmacy to provide warnings would lead risk averse pharmacies to institute a policy of warning a customer of all known side effects, no matter how minute or unproven. As a result, "a patient who is faced with an overwhelming number of warnings from his or her pharmacist may decide not to take a medication prescribed by a physician." *Id.* at 467. *Coyle* v. *Richardson-Merrell, Inc.*, 526 Pa. 208 (1991), notes that there is good reason to treat pharmacies differently from other retailers of commercial products: pharmacists do not choose which products to make available to consumers and patients do not choose which products to buy. *Id.* at 214. The pharmacist does not have discretion to alter or refuse to fill a prescription because the risks and benefits of that prescription for that particular patient have already been weighed by the physician. *Id.*

This court has already recognized the learned intermediary doctrine in the context of prescription drug manufacturers. See *MacDonald* v. *Ortho Pharm. Corp.*, *supra* at 136 (recognizing learned intermediary doctrine but creating exception for oral contraceptives). Because the physician is the appropriate person to perform the duty of warning a patient of the possible side effects of prescription drugs, we now extend this doctrine to pharmacies.

A few courts have imposed a duty on pharmacies that goes beyond merely filling prescriptions accurately. These cases, however, involve more than a simple failure to warn. For example, courts have held that a pharmacy could be found negligent for filling a prescription for what the pharmacist knew to be a lethal dose, see *Horner* v. *Spalitto*, 1 S.W.3d 519 (Mo. Ct. App. 1999), for failing to warn the customer when filling two prescriptions that adversely interact with one another, see

*Lasley* v. *Shrake's Country Club Pharmacy, Inc.*, 179 Ariz. 583 (Ct. App. 1994), and for failing to warn the customer of the drug's adverse interaction with alcohol where the customer was known by the pharmacist to be an alcoholic, see *Hand* v. *Krakowski*, 89 A.D.2d 650 (N.Y. 1982). In each of these cases, the pharmacist failed to act on specific knowledge that he or she possessed regarding danger to a particular customer. We do not address cases such as these, and hold simply that, where the pharmacist has no specific knowledge of an increased danger to a particular customer, the pharmacist has no duty to warn that customer of potential side effects.

3. *Voluntary assumption of a duty.* Cottam's primary theory at trial was not that all pharmacies have a duty to warn their customers of the side effects of prescription drugs, but rather that CVS voluntarily assumed such a duty when it provided him with a list of side effects of Trazodone. On appeal, CVS contends that the evidence was insufficient to establish its voluntary assumption of any duty to warn of all potential side effects of Trazodone. However, the arguments now put forward were not presented to the judge in CVS's motion for a directed verdict, and CVS made no objection to the judge's instructions on the subject of voluntary assumption of a duty. The issues are thus waived.

Because the issue is one of importance to both the industry and patient consumers, and has been thoroughly briefed by the parties, we address it. A pharmacy, like any other person or entity, may voluntarily assume a duty that would not otherwise be imposed on it, and thus may voluntarily assume a duty to provide information, advice or warnings to its customers. Massachusetts recognizes that "a duty voluntarily assumed must be performed with due care," and we have approved the principles pertaining to voluntary assumption of a duty as set forth in the Restatement (Second) of Torts § 323 (1965).[2] *Mullins* v. *Pine Manor College*, 389 Mass. 47, 52, 53 (1983). "If a person

[2]The Restatement (Second) of Torts § 323 (1965), provides: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a)

voluntarily assumes a duty or undertakes to render services to another that should have been seen as necessary for her protection, that person may be liable for harm caused because of the negligent performance of his undertaking." *Thorson* v. *Mandell*, 402 Mass. 744, 748 (1988).

Defining the scope of the duty assumed is a fact-specific inquiry. For example, in *Davis* v. *Westwood Group*, 420 Mass. 739, 746-747 (1995), we held that a defendant who hired an officer to direct pedestrians across a State highway did not thereby undertake a broader duty to provide safe pedestrian passage by any other means (such as installation of a traffic light or construction of a pedestrian bridge). Rather, we held that the defendant had undertaken only "one specific task" and thus had a duty to perform only that specific task with due care. *Id.* We noted that imposition of a broad duty, beyond the specific task that the defendant had voluntarily assumed, would effectively "penalize" the defendant for having taken the precaution of hiring a crossing guard. *Id.* at 747 n.13. See *Thorson* v. *Mandell*, *supra* (policy prohibiting certain uses of auditorium "was not an undertaking to render services for the protection of its users").

Other jurisdictions have applied these principles to pharmacies, defining the scope of the duty voluntarily undertaken based on the pharmacy's communications with its customers. In *Baker* v. *Arbor Drugs, Inc.*, 215 Mich. App. 198, 205-206 (1996), the defendant pharmacy had advertised that it would, with its computer system, monitor customers' medications and detect potential harmful drug interactions. It thus voluntarily assumed a duty of due care with respect to that advertised system, and a patient who suffered from a drug interaction was allowed to pursue his claim against the pharmacy for having failed to utilize its drug interaction warning system with due care. *Id.* See *Sanderson* v. *Eckerd Corp.*, 780 So. 2d 930 (Fla. Dist. Ct. App. 2001) (pharmacy advertising may constitute voluntary assumption of duty to warn of adverse drug reactions). In *Ferguson* v. *Williams*, 101 N.C. App. 265, 272 (1991), the court held that a pharmacist who gave information and advice concerning

his failure to exercise such care increases the risk of harm, or (b) the harm is suffered because of the other's reliance upon the undertaking."

drug allergies as part of her conversation with a patient had thereby assumed a duty to give correct advice and could be held liable for inaccuracies in the advice given.

When a pharmacy's communication with a patient concerning a drug is limited to a single label warning of only one side effect, the pharmacy has undertaken a duty to warn correctly as to that specific side effect but has not undertaken a broader duty to warn of all potential side effects. In *Frye* v. *Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32-34 (1992), the court held that a pharmacy did not assume a duty to warn of all side effects when it merely affixed a label warning that the drug might cause drowsiness. The court noted that the imposition of a broad duty based on such facts would cause pharmacists to "refrain from placing any warning labels on containers," thus depriving all consumers of beneficial warnings and useful information. *Id.* at 33. The court also reasoned that a single warning label would not mislead a patient into thinking that that was the only potential side effect of the drug. *Id.* at 34.

Here, Cottam correctly points out that the warning form he was given went beyond the single warning label at issue in *Frye* v. *Medicare-Glaser Corp.*, *supra*. We agree that the present case is readily distinguishable. We note, however, that the *Frye* principles have been extended to a case where the pharmacist provided an information sheet listing several side effects and characterizing them as "unlikely." *Kasin* v. *Osco Drug, Inc.*, 312 Ill. App. 3d 823, 825 (2000). There, the court read the *Frye* case as limiting a pharmacist's voluntary undertaking to the precise information listed, requiring only that that information be accurate, and declined to impose any duty to provide warnings or information on any other side effects. While we are persuaded by the *Frye* reasoning, we do not agree that that reasoning should extend to cases where the information provided could reasonably be understood by the patient as a complete list of side effects. Where, as here, the patient could reasonably interpret the warning form as a complete and comprehensive list of all known side effects, it is appropriate to impose on the pharmacy a duty commensurate with what it appeared to have undertaken.

We reiterate that determination of the scope of the duty

voluntarily undertaken by a pharmacy is a fact-specific inquiry based on the totality of the pharmacy's communications with the patient and the patient's reasonable understanding, based on those communications, of what the pharmacy has undertaken to provide. We agree with *Frye* v. *Medicare-Glaser Corp.*, *supra* at 32-34, that a single label containing only one specific warning (e.g., "Do Not Take with Alcohol," "Take with Food," or "Do Not Take If You Are Pregnant") cannot reasonably be construed by the patient as a comprehensive list of all side effects, contraindications, or potential adverse interactions. Where, however, a pharmacy provides a more detailed list of warnings, or, by way of advertising, promises to provide customers with information, it may thereby undertake a duty to provide complete warnings and information. We thus conclude that, even had it been raised below, CVS's argument that it did not assume a duty to warn of all side effects would be unavailing.

4. *The need for expert testimony.* CVS argued below, and argues on appeal, that if it had any duty to warn, the plaintiff must prove the scope and breach of that duty by expert testimony. We disagree. The common-law duty to warn "necessitates a warning 'comprehensible to the average user and . . . [one] convey[ing] a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person.' " *MacDonald* v. *Ortho Pharm. Corp.*, *supra* at 140, quoting *Ortho Pharm. Corp.* v. *Chapman*, 180 Ind. App. 33, 49 (1979). At issue is the adequacy of the warning, not the technical performance of the pharmacist. The crucial issues in this aspect of the case were the extent of CVS's undertaking to warn and whether a reasonable person would have been misled by the warning. In this case, the determination did not involve professional or technical knowledge for which a jury need expert aid. Rather, it involved a commonsense determination regarding the understanding of an ordinary, reasonably prudent person, a determination properly left to the jury without expert testimony.

5. *The exclusion of CVS's evidence rebutting the inference that plaintiff would have heeded a warning.* During its cross-examination of Cottam, CVS attempted to elicit testimony that Cottam continued to smoke cigarettes despite the health warnings on cigarette packages. CVS argued that such evidence

tended to show that, even if CVS had provided a warning about priapism, Cottam would not have heeded it. CVS argues that the judge's exclusion of this testimony is reversible error. Massachusetts law permits the jury to infer that a warning, if properly given, would have been followed. See *Harlow* v. *Chin*, 405 Mass. 697, 702-703 (1989). Although a party may rebut this inference, see *Wolfe* v. *Ford Motor Co.*, 6 Mass. App. Ct. 346, 352 (1978) "[t]he decision whether evidence is relevant remains within the sound discretion of the trial judge." *McLaughlin* v. *Vinios*, 39 Mass. App. Ct. 5, 8 (1995), quoting *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 477 (1991). There is a considerable difference between a long-time smoker's failure to heed the health warnings on cigarette packages and a failure to heed a warning about a medical condition that could result in permanent impotence. Because cigarettes are addictive, many smokers may be physically unable to heed the warnings on cigarette labels. This does not suggest that the same people would ignore warnings or instructions about a prescription drug. The judge did not abuse her discretion in finding that CVS's proposed evidence was too remote from the warning at issue to be relevant.

6. *Evidence of the plaintiff's prior settlement with his doctor.* Cottam settled his claim against Dr. Khajavi, his prescribing physician, prior to the start of trial. CVS called Dr. Khajavi as a witness to testify that he had indeed warned Cottam that priapism was a side effect of Trazodone. Dr. Khajavi testified that he had repeatedly discussed the risks of Trazodone, including priapism, with Cottam, and that Cottam agreed to take the medication despite the fact that he was aware of its side effects. Over CVS's objection, the judge permitted Cottam to cross-examine Dr. Khajavi about his settlement with Cottam. CVS maintains that the judge should have excluded this evidence as improper evidence of a settlement used to prove liability.[3]

Although evidence of a prior settlement is not admissible to

---

[3]Cottam argues that CVS has waived this issue by failing to object to the evidence of the settlement at the time of Cottam's cross-examination of Dr. Khajavi. Although CVS did not object to the questions regarding the settlement at the time they were asked, just prior to the time that Dr. Khajavi testified, CVS objected to any evidence regarding the settlement and directed the judge's attention to a case holding that evidence of a settlement is inadmis-

prove liability or the amount of a claim, see *Morea* v. *Cosco, Inc.*, 422 Mass. 601, 604 (1996), evidence of a settlement is admissible when offered for another purpose. *Id.* Here, the settlement was relevant to Dr. Khajavi's credibility. It tended to show that Dr. Khajavi may have harbored bias against Cottam, both for the fact that Cottam had brought a lawsuit against him and for the fact that the insurer had settled the claim.

Of course, admission of this evidence created the risk that the jury would perceive the settlement by Dr. Khajavi as an admission of his liability and, therefore, as rebutting CVS's defense that Dr. Khajavi had warned the plaintiff. However, the judge, in the exercise of her discretion, permissibly could have concluded that fairness required that the jury be informed of the settlement. CVS was free to point out to the jury that the settlement was not an admission of liability by Dr. Khajavi. In fact, during pretrial discussions on the matter, the judge informed CVS that it could bring to the jury's attention the fact that the settlement did not involve an admission of liability. CVS chose not to do so, but did present testimony through Dr. Khajavi that the suit against him was settled by his insurance company without his consent. In addition, the judge twice informed the jury that the settlement was not to be considered on the issue of CVS's liability.[4] In these circumstances, we cannot say that admission of the evidence of settlement was an abuse of discretion.

*Judgment affirmed.*

sible to prove liability. Because the judge was alerted to CVS's position and could have acted on the objection had she been so disposed, we deem the issue to have been fully preserved.

[4]The judge's final instruction to the jury was as follows:

> "The question of settlement as to one of the witnesses, Dr. Khajavi in this case, is not evidence of negligence of the defendant CVS. And whatever may have happened as far as Dr. Khajavi is concerned is only relevant to your consideration and assessment of his credibility. In other words, did the settlement and the facts surrounding that settlement that have been presented to you influence his testimony in this courtroom. It is not evidence from which you may make a decision as to the liability of CVS, nor is it a decision as to any other issue . . . ."