ASSOCIATION OF WASHINGTON PUBLIC HOSPITAL DISTRICTS, a Washington unincorporated association, et al., Plaintiffs,

v.

PHILIP MORRIS INCORPORATED, et al., Defendants.

No. C98–1675Z.

United States District Court, W.D. Washington, at Seattle.

Dec. 13, 1999.

Bradley J. Berg, Christopher Kane, Roger D. Mellem, Michael K Vaska, Foster Pepper & Shefelman, Seattle, WA, for Association of Washington Public Hospital Districts, Grays Harbor County Public Hosp. Dist. No 1, King County Public Hosp. dist. No 1, Okanogan County public Hosp. Dist. No 4, plaintiffs.

Christopher Kane, Foster Pepper & Shefelman, Seattle, WA, for Adams County Public Hospital Dist. No 2, Adams County Public Hospital Dist. No 3, Affiliated Health Services, Chelan County Public Hospital Dist. No 1, Chelan County Public Hospital Dist. No 2, Clallam County Public Hospital Dist. No 1, Clallam County Public Hospital Dist. No 2, Douglas Grant Lincoln Okanogan Counties Public Hospital Dist. No 6, Ferry County Public Hospital Dist. No 1, Garfield County Public Hospital District, Grant County Public Hospital Dist. No 1, Grant County Public Hospital Dist. No 2, Jefferson County Public Hospital Dist. No 2, Kennewick Public Hospital Dist., King County Public Hospital Dist. No 2, Kittitas County Public Hospital Dist. No 1, Lewis County Public Hospital District No 1, Lincoln County Public Hospital District No 1, Mason County Public Hospital District No 1, Okanogan County Public Hospital District No 3, Okanogan and Douglas Counties Public Hospital District No 1, Pacific County Public Hospital District No 2, Pacific County Public Hospital District No 3, Pend Oreille County Public Hospital District No 1, Skagit Co Public Hosp., Skagit County Public Hospital Dist. No 2, Skagit and Whatcom Counties Public Hospital Dist. No 304, Snohomish County Public Hospital Dist. No 1, Snohomish County Public Hospital Dist. No 2, Snohomish County Public Hospital Dist. No 3, Whitman County Public Hospital Dist. No

1–A, Whitman County Public Hospital Dist. No 3, plaintiffs.

Michael K Vaska, Foster Pepper & Shefelman, Seattle, WA, for Grant County Public Hospital Dist. No 3, Prosser Public Hospital Dist., plaintiffs.

John Wentworth Phillips, Heller Ehrman White & McAuliffe, Seattle, WA, for Philip Morris Inc, defendant.

Bradley S. Keller, Byrnes & Keller, Seattle, WA, Peter J Busch, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, San Francisco, CA, for RJ Reynolds Tobacco Company, defendant.

John Arthur Tondini, Byrnes & Keller, Seattle, WA, for Brown & Williamson Tobacco Corp, defendant.

Stephen Murray Todd, Mark Robert Koenig, Todd & Wakefield, Seattle, WA, for Bat Industries PLC, defendant.

Delbert D Miller, Miller Bateman LLP, Seattle, WA, for United States Tobacco Co, defendant.

Patrick S Davies, Covington & Burling, Washington, DC, for Tobacco Institute Inc, defendant.

John D. Wilson, Jr., Wilson, Smith, Cochran & Dickerson, Seattle, WA, for Smokeless Tobacco Council Inc, defendant.

Bradley S. Keller, Byrnes & Keller, Seattle, WA, for RJ Reynolds Tobacco Company, defendant.

Michael P Panagrossi, David Moss, Adam I Stein, Mary Elizabeth McGarry, Simpson Thacher & Bartlett, New York City, Stephen Murray Todd, Mark Robert Koenig, Todd & Wakefield, Seattle, WA, for British American Tobacco P.L.C. fka B.A.T. Industries, defendant.

John G. Bergmann, Robert N Gellatly, Jr., Helsell Fetterman LLP, Seattle, WA, for Liggett Group Inc, Liggett & Myers Inc, defendants.

## ORDER

ZILLY, District Judge.

Plaintiffs are Public Hospital Districts in counties throughout Washington State, and the trade association of these hospital districts (collectively, the "plaintiffs"). Defendants are tobacco companies and related entities associated with the tobacco manufacturers (collectively, the "defendants"). Plaintiffs have brought federal and state claims against defendants for the unreimbursed health care costs associated with treating patients with smoking-related illnesses. This matter comes before the Court on the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), docket no. 34. The Court heard oral argument on October 15, 1999, and took the matter under advisement. The Court has considered the briefs of the parties and the oral argument of counsel and now GRANTS defendants' motion to dismiss for the reasons stated in this order.

### BACKGROUND

Plaintiffs, political subdivisions of the State of Washington, are required by law to provide medical care and services for the residents of their districts. RCW 70.44.003. Each plaintiff alleges that it was required by law to provide unreimbursed health care services to patients who have suffered from tobacco-related diseases. Second Amended Complaint ("SAC"), ¶¶ 1 and 17; RCW 70.170.060. Plaintiffs allege that defendants engaged in deceptive acts and conspired to perpetuate smoking and nicotine addiction in the United States. Plaintiffs further allege that the tobacco companies have forced the public hospitals and others to bear the cost of such care. Plaintiffs seek to recover the unreimbursed portion of this cost, SAC at ¶¶ 1–10, as well as other equitable and injunctive relief.

Plaintiffs seek recovery under various legal theories including federal antitrust violations, RICO violations, fraudulent misrepresentation, fraudulent concealment, breach of a special duty to disclose health hazards, unjust enrichment, conspiracy, violations of the Washington Consumer Protection Act, and public nuisance. Defendants have moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss plaintiffs' claims for several reasons, including, but

not limited to: (1) plaintiffs' claims are too remote and wholly derivative of injuries to unnamed smoker-patients; and (2) plaintiffs' losses are in fact expenses which the plaintiffs had a duty to incur. Defendants' memo in supp., docket no. 35, at 1.

Plaintiffs here bring claims similar to other plaintiffs who have unsuccessfully sought recovery for injuries that derive from the treatment of smokers' illnesses. In *Oregon Laborers–Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 185 F.3d 957 (9th Cir.1999), *petition for cert. filed*, 68 U.S.L.W. 3274 (U.S. Oct. 12, 1999) (No. 99–642) the Ninth Circuit affirmed the dismissal of the plaintiff union trusts' claims for failure to state a claim. In that case, the Court concluded that plaintiffs' claims were "too remote" from defendants' alleged wrongdoing to allow recovery. *Id.* at 964. In other words, there was no showing of a direct link between the alleged misconduct of many of the same defendant tobacco companies and the alleged damage to the union trusts. Three other Circuits have reached the same result. *See Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir.1999), *petition for cert. denied*, —— U.S. ——, 120 S.Ct. 799, —— L.Ed.2d —— (1999); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir.1999), *petition for cert. filed*, 68 USLW 3251 (U.S. Jan. 10, 2000); *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris, Inc.*, 196 F.3d 818 (7th Cir.1999). This Court has dismissed similar derivative actions by third party payors of medical costs. *Regence Blueshield v. Philip Morris, Inc.*, 40 F.Supp.2d 1179 (W.D.Wash.1999), appeal docketed, No. 99–35204 (9th Cir. March 1, 1999); *see also Int'l Bhd. of Teamsters*, 196 F.3d 818 (dismissing claims by Blue Cross and Blue Shield, consolidated with trust fund suits). Plaintiffs in these cases asserted the same federal, state statutory, and common law claims now alleged in the present case.

The issue presented in this case is whether plaintiffs' claims are different than the previous unsuccessful claims of the union trusts and third party insurance providers. For the reasons stated in this order, the Court concludes that they are not; the rationale of *Oregon Laborers* is fatal to plaintiffs' claims and this case must be dismissed. As in *Oregon Laborers*, plaintiffs' claims in this case are derivative of the harm suffered by non-party smokers and the defendants did not proximately cause the injuries alleged.

## ANALYSIS

### (A) Rule 12(b)(6) Standard

On a motion to dismiss under Rule 12(b)(6) the Court must accept as true all plaintiffs' allegations and construe those allegations in the light most favorable to plaintiffs. *NOW v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994); *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 444, 142 L.Ed.2d 399 (1998). Thus, the complaint should be dismissed for failure to state a claim only if plaintiffs can prove no set of facts which would entitle them to relief.

For purposes of this motion, the Court assumes that the following facts alleged by plaintiffs are true. Tobacco use is harmful to the user's health. *See* SAC ¶¶ 73–82. The defendants had evidence of this fact for many years and have conspired to withhold this information from the public, including the public health care industry. *See id.* ¶¶ 87–163. This lack of information prevented plaintiffs from properly informing its patients about the dangers of tobacco use and delayed the implementation of programs to reduce tobacco use. *See id.* ¶¶ 17–18, 317–319. The defendants conspired to suppress the research and development of less harmful tobacco products. *See id.* ¶¶ 204–234, 304–310. The absence of less harmful tobacco products prevented public health officials from encouraging patients to utilize safer products. *See id.* ¶¶ 317–319, 401. Plaintiffs have incurred costs associated with the unreimbursed health care treatment of tobacco-related illnesses. *See id.* ¶¶ 1–3. Had the defen-

dants not withheld information and suppressed research into less harmful products, fewer patients would have used the more harmful products. *See id.* ¶¶ 4–10. Consequently, fewer patients would have developed a tobacco-related illness and the public hospitals' costs for providing medical treatment for such illnesses would have been reduced. *See id.* ¶ 10. Based on these alleged facts, plaintiffs argue that injury to their business and property arose as a direct result of the defendants' conduct.

### (B) *Antitrust Claims*

Plaintiffs allege violations of the Sherman Act, 15 U.S.C. § 1 and RICO, 18 U.S.C. § 1964(c). Both statutes provide a private right of action only to those plaintiffs "injured in [their] business or property by reason of" a violation of the laws' substantive provisions. *Oregon Laborers,* 185 F.3d at 963; 18 U.S.C. § 1964 (RICO); 15 U.S.C. § 15(a) (antitrust). Both statutes also require that the alleged violation be a "proximate cause" of the injury suffered. *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 477, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982) (antitrust); *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (RICO). Proximate cause means that the injury to business and property must be directly caused by the conduct alleged. Thus, plaintiffs asserting antitrust or RICO claims must establish both "standing" or "proximate cause" as well as an "antitrust injury" to recover. Each requirement must be analyzed separately.

### (1) *Antitrust Standing and Proximate Cause*

■ "The antitrust laws do not provide a remedy to every party injured by unlawful economic conduct." *American Ad Management Inc. v. GTE of California,* 190 F.3d 1051, 1055 (9th Cir.1999). Antitrust laws are only intended to preserve competition for the benefit of consumers. *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 538, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). The concept of antitrust standing requires the Court to "evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Associated General Contractors,* 459 U.S. at 535, 103 S.Ct. 897. The Supreme Court has identified several factors to be considered in determining whether a plaintiff has antitrust standing: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *Amarel v. Connell,* 102 F.3d 1494, 1507 (9th Cir.1996), *citing Associated General Contractors,* 459 U.S. at 535, 103 S.Ct. 897.

### (a) *Nature of the injury*

■ "The antitrust laws ... were enacted for the protection of competition, not competitors." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (citations and quotations omitted). The corollary is that the injured party must be a participant in the same market. *Bhan v. NME Hospitals, Inc.,* 772 F.2d 1467, 1470 (9th Cir.1985). Plaintiffs' contention, that they are "direct purchasers of ... nicotine delivery products for the treatment of nicotine addition," and thus "consumers in the same market," SAC ¶ 10, is without merit. It cannot be said that plaintiffs either compete with the tobacco companies in the manufacture or sale of cigarettes or that they directly consume these products. To the extent plaintiffs have suffered damages, their claims are derivative of the injuries suffered by the smoker patients.

### (b) *Directness of injury*

Plaintiffs allege both a "direct" and an "indirect" injury as a result of defendants' conduct, specifically that defendants conspired to withhold information from plain-

tiffs that was necessary to properly diagnose and treat smoking as an addiction. Plaintiffs argue that "the tobacco [d]efendants' conspiracy made the [p]laintiffs unwitting accomplices in increasing their own injuries." Plaintiffs' memo in opp., docket no. 84, at 2. Thus, plaintiffs contend, the defendants' conspiracy resulted in a direct injury to plaintiffs' business and property. Plaintiffs also allege indirect injury in the form of excessive costs necessary to treat their smoker-patients.

A direct relationship between the injury and the alleged wrongdoing is "one of [the] central elements" of proximate causation in antitrust claims. *See Holmes,* 503 U.S. at 269, 112 S.Ct. 1311, *citing Associated General Contractors,* 459 U.S. at 540, 103 S.Ct. 897; *see also Oregon Laborers,* 185 F.3d at 963. Smokers that have become ill as a result of using tobacco products are the direct victims of the misconduct asserted in this litigation. These smokers can bring claims directly against the tobacco companies for their injuries. The existence of these more direct victims of the alleged wrongful conduct weighs in favor of barring plaintiffs' claims.

In *Oregon Laborers,* 185 F.3d at 961, six Oregon-based employee health and welfare trust plans filed suit against various tobacco companies based upon federal antitrust, RICO and other state law claims. The case was dismissed on motion for summary judgment and affirmed by the Ninth Circuit. The plaintiffs in *Oregon Laborers* alleged claims against the tobacco defendants very similar to those presented in this case. The Ninth Circuit, following the Supreme Court's lead in *Holmes,* 503 U.S. at 269, 112 S.Ct. 1311, held that the claims were too remote to allow recovery under RICO and antitrust laws, reasoning:

> A direct relationship between the injury and the alleged wrongdoing, although not the sole requirement of RICO and antitrust proximate causation, has been one of its central elements. Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too

remote a distance to recover. (citations and quotations omitted)

Like the plaintiffs in *Oregon Laborers,* plaintiffs' alleged injuries are derivative by nature. The injuries to plaintiffs occur only if there is first an injury to smoking patients. *Oregon Laborers,* 185 F.3d at 963. Without any injury to smokers, plaintiffs would not have incurred the additional expenses in paying for the medical expenses of those smokers. *Id.* There is therefore no direct link between the alleged misconduct of the tobacco companies and the claimed damage to plaintiffs. *See Id.; Laborers Local 17,* 191 F.3d at 239 (dismissing RICO claims because trust funds' damages "are entirely derivative of the harm suffered by plan participants as a result of using tobacco products"); *Steamfitters,* 171 F.3d at 928 (holding that regardless of plaintiffs' characterization as direct or indirect, claims "fail for being too remotely connected in the causal chain from any wrongdoing on defendants' part.")

(c) *Speculative nature of harm*

Plaintiffs allege that but for the defendants' conspiracy, they would have "many years earlier" diagnosed smoking as an addiction, banned or limited the sale of cigarettes on their premises, and taken other steps to ensure their patients were properly diagnosed and treated. SAC, ¶ 371. Plaintiffs contend that these steps "would have reduced [their] damages from treating smoking-related diseases." Plaintiffs' memo in supp., docket no. 84, at 4. In order to calculate damages, plaintiffs would be required to prove how many smokers would have stopped smoking with more information, how many would have smoked less dangerous products, how much healthier these hypothetical reformed smokers would have been, and how much less unreimbursed care and services would have been incurred by the plaintiffs. These damage claims are highly speculative in light of the multitude of factors that might affect damages. "The difficulty of

ascertaining the damages attributable to defendants' alleged wrongful conduct and the complexity involved in calculating these damages weigh heavily, if not dispositively, in favor of barring plaintiffs' actions." *Oregon Laborers,* 185 F.3d at 965.

(d) *Risk of duplicative recovery and complexity in apportioning damages*

Plaintiffs have already been reimbursed, in part, for services under Medicare and Medicaid and have accepted reimbursement "as payment in full." 42 CFR § 447.15; WAC 388–550–3000(6). Other litigation pursued directly by smokers or by the State of Washington has resulted or will result in substantial recoveries or settlements. The Court would be forced to adopt complicated rules apportioning damages to eliminate the risk of multiple recoveries. This factor also weighs in favor of barring plaintiffs' action.

(e) *Standing and proximate cause precedents*

Several other courts have held that third party insurers and trusts funds lacked standing to sue tobacco companies for medical care costs of smoking-related illness. *See, e.g., Laborers Local 17,* 191 F.3d at 239; *Oregon Laborers,* 185 F.3d at 969; *Steamfitters,* 171 F.3d at 927; *Regence Blueshield,* 40 F.Supp.2d at 1185. In each case, plaintiffs could not demonstrate that the defendants proximately caused their injuries.

Plaintiffs attempt to distinguish these cases by demonstrating the differences between insurance providers and health and welfare trust funds, on the one hand, and the Public Hospital Districts, on the other. Unlike the insurance providers and union trusts funds, plaintiffs argue they have a duty to safeguard public health, an obligation to provide care even if smokers cannot pay, and no subrogation rights. Thus, plaintiffs directly incur the costs of treating smoking-related illness through unreimbursed medical treatment of patients, unlike insurers who pass such costs on to their insureds. Plaintiffs also claim

to provide advice about smoking and health, and directly purchase nicotine products to treat those addicted to tobacco. Plaintiffs rely on these alleged differences to argue that they have standing to bring their claims in this litigation. The Court is unconvinced; these claimed differences in the structure and functions of the Public Hospital Districts do not support standing to bring these antitrust and RICO claims. Plaintiffs bring claims which are almost identical to the claims of the third party insurers and health and welfare trust funds. "[N]o amount of semantic gymnastics can detract from the conclusion that [plaintiffs'] claims are completely derivative of the personal injuries to [smokers] allegedly caused by the defendants' conduct." *Regence Blueshield,* 40 F.Supp.2d at 1184.

Plaintiffs further allege that their special relationship with patients confers standing, relying in part upon the decisions in *Singleton v. Wulff,* 428 U.S. 106, 112–13, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (ruling that respondent-physicians suffered concrete injury from an anti-abortion statute that denied physicians Medicaid reimbursement for abortions not "medically indicated"); and *Lee v. State of Oregon,* 869 F.Supp. 1491, 1494–95 (D.Or. 1994) (holding doctors had third party standing to challenge physician-assisted suicide based on showing of direct financial impact on their practices). These cases have allowed doctors to challenge laws that directly impacted their medical practice. However, these cases do not provide support for granting plaintiffs standing under the antitrust laws.

Plaintiffs also base standing on the duty owed by hospitals to their patients. *See Niece v. Elmview Group Home,* 131 Wash.2d 39, 48, 929 P.2d 420 (1997) (holding Courts have held that hospitals have a "duty to protect its patients from the tortious or criminal actions of third parties" due to "the special relationship between the hospital and the patient."); *Douglas v. Freeman,* 117 Wash.2d 242, 248, 814 P.2d 1160 (1991) (ruling that hospitals owe non-

delegable duty directly to their patients). Public hospitals must provide care for their patients regardless of their ability to pay. RCW 70.170.060. Plaintiffs allege that this duty distinguishes the cases of third party payors, who had merely a contractual relationship with the injured smokers.

Unquestionably hospitals have a duty to protect their patients. But hospitals may not generally sue companies who have caused their patients' illnesses. Could plaintiffs sue an auto manufacturer for the unreimbursed costs of treating a patient injured as a result of a defective car? Could plaintiffs sue food manufacturers for the unreimbursed costs of treating persons injured as a result of food poisoning? In these hypothetical cases, plaintiffs could not show that the defendant's actions proximately caused their injuries. The same is true here. Thus, plaintiffs do not have standing to sue the tobacco companies for the unreimbursed costs of treating smokers.

### (f) *Conclusion: plaintiffs do not have standing*

Each of the factors identified in *Associated General Contractors* weigh against antitrust standing in this case. Plaintiffs alleged damages were not the type the antitrust laws were intended to forestall. The claimed damages are highly speculative and uncertain. Allowing the case to proceed could result in duplicative and complex damages. Plaintiffs' damages are derivative of injuries to others and they cannot demonstrate proximate cause.

### (2) *Antitrust Injury*

■ Even if plaintiffs could demonstrate standing, they must also demonstrate an antitrust injury. An "antitrust injury" is an injury of the type the antitrust laws were intended to prevent. *Associated General Contractors*, 459 U.S. at 540, 103 S.Ct. 897. Plaintiffs must have suffered their alleged antitrust injury in the market where competition is being restrained. *American Ad Mgmt.*, 190 F.3d at 1057.

Defendants are in the market of selling cigarettes and tobacco products, while plaintiffs are in the health care market. Plaintiffs attempt to stretch the definition of market by labeling the tobacco companies "sellers in the broad U.S. market for drugs." SAC, ¶ 80. Plaintiffs assert that they are purchasers of drugs, including "nicotine delivery products" used to treat nicotine addiction. However, plaintiffs' alleged injuries did not arise from their purchase of nicotine products but from their patients' consumption of tobacco products. Plaintiffs and tobacco companies are not in the same market; they are neither consumers, competitors, suppliers, or dealers, nor do they have a sufficiently close tie with the tobacco market.

"Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." *American Ad Mgmt.*, 190 F.3d at 1057. Because the plaintiffs and defendants are in different markets, no "antitrust injury" occurred. *See Bhan*, 772 F.2d at 1470; *see also Steamfitters*, 171 F.3d at 926. Interpreting the definition of market as broadly as plaintiffs suggest would enable dentists to sue candy makers for their unreimbursed cost of treating their patients' cavities. The Court declines to so extend the scope of the antitrust laws.[1]

---

1. One narrow exception to this market participant requirement is for parties whose injuries are "inextricably intertwined" with the injuries of market participants. *See McCready*, 457 U.S. at 484, 102 S.Ct. 2540 (granting standing to psychologists to challenge restrictions for psychotherapeutic services). This test requires that the plaintiffs are a "necessary means to achieve the conspirators' illegal end as well as an integral and inextricable part of the anticompetitive scheme." *Ostrofe v. H.S. Crocker Co.*, 740 F.2d 739, 746 (9th Cir.1984). The injury to plaintiffs is not "inextricably intertwined" with the tobacco companies' unlawful activities. The injuries sustained by plaintiffs were incidental to the alleged scheme of the defendants, and occurred in a completely distinct market.

## (C) RICO Claims

### (1) RICO Standing

■ Plaintiffs must have standing to assert their RICO claims against the defendants. The standing requirements under RICO are similar to those under antitrust law. *See Holmes*, 503 U.S. at 268, 112 S.Ct. 1311; *Oregon Laborers*, 185 F.3d at 963. Thus, the Court's analysis for antitrust standing is applicable for RICO.

Plaintiffs rely heavily on *NOW v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) in support of RICO standing. In *Scheidler*, the Court allowed abortion clinics to pursue RICO claims against anti-abortion protesters who allegedly conspired to use or threaten violence against clinic employees, doctors and patients. The conspiracy was actively directed at the clinics and their employees, and the injuries to clinic business were directly caused by the defendants' alleged activities. The Supreme Court held that "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim ... Nothing more is needed to confer standing." *Id.* (citations omitted). Plaintiffs allege that "[a]s in *Scheidler*, the PHDs are health care providers who have alleged injuries to business and property as a result of the Tobacco defendants' predicate RICO acts." Plaintiffs' memo in opp., docket no. 64, at 11. However, the activities of the tobacco companies in this case were not directly aimed at causing injury to plaintiffs. Rather, plaintiffs suffered incidental damage as a result of the injuries to smokers who were the direct target of the defendants' activities. Plaintiffs have alleged no specific facts that could overcome the proximate cause and standing concerns of the Court.

Plaintiffs also rely on *Pharmacare v. Caremark*, 965 F.Supp. 1411 (D.Haw.1996). In that case, the court denied a motion to dismiss RICO claims brought by a healthcare provider against a competitor who had illegally paid doctors for patient referrals. The Court held that plaintiffs had standing to pursue their RICO claims because the alleged fraud could foreseeably affect the plaintiffs. There, the plaintiffs were the direct target of the defendants' scheme to obtain an unfair competitive advantage by fraudulently soliciting these referrals. Here, however, the tobacco companies would not stand to benefit competitively by harming plaintiffs, and plaintiffs were not the direct target of the defendant's activities. Therefore, plaintiffs lack standing for their RICO claims.

### (2) RICO Injury

■ The RICO statute also requires that the alleged violation of the law be a "proximate cause" of the injury suffered. *See Holmes*, 503 U.S. at 268, 112 S.Ct. 1311. Plaintiffs claims in this action are too remote to allow recovery under RICO. *Oregon Laborers*, 185 F.3d at 963; *see also Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303 (9th Cir.1992), *cert. denied*, 507 U.S. 1004, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993) (holding that subcontractors lacked standing to bring RICO claim against defendant, whose fraud allegedly caused their prime contractor to lose bid); *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 929 (9th Cir.1994) (affirming dismissal of subtenant's RICO claim that defendant's fraudulent acts raised master tenant's rent, which was passed on to plaintiff). Here again, plaintiffs cannot get beyond the fact that any injuries they might have suffered occurred only as a result of injuries suffered first by individual consumers of the defendant's product. Plaintiffs cannot therefore show that their injuries were proximately caused by defendant's conduct.

## (D) State Law Claims

### (1) Fraudulent Concealment and Misrepresentation

■ Plaintiffs' fifth and sixth claims are for fraudulent misrepresentation and fraudulent concealment under Washington

State law. An essential element of any claim for fraud is proximate cause. *Amtruck Factors v. International Forest Products*, 59 Wash.App. 8, 14, 795 P.2d 742 (1990), *rev. denied*, 116 Wash.2d 1003, 803 P.2d 1310 (1991). For the reasons heretofore stated, plaintiffs cannot establish proximate cause in this case as a matter of law. *Oregon Laborers*, 185 F.3d at 964.

### (2) *Breach of Special Duty*

Count 7 of plaintiffs' complaint alleges that the defendants breached a special duty owed by defendants to the plaintiffs under Washington State law. Plaintiffs allege that defendants voluntarily assumed a special duty to protect public health by making statements to the public, beginning with the "Frank Statement to Cigarette Smokers" in 1954. SAC, ¶ 375. Plaintiffs allege that the defendants breached that duty by suppressing information vital to the public health, such as the addictiveness of nicotine and the relationship between disease and tobacco use. According to plaintiffs, the breach of this duty caused more smokers to smoke, and the public hospitals to bear increased health costs.

 The existence of a special duty is an issue of law in Washington. *Hanse v. Friend*, 118 Wash.2d 476, 479, 824 P.2d 483 (1992). Even assuming the "Frank Statement to Cigarette Smokers" created a special duty to the public health community, plaintiffs cannot establish that any breach proximately caused the damages claimed. *State of Washington v. American Tobacco Co.*, 1996 WL 931316, *8 No. 96–2–15056–8 SEA, (Wash.Super Nov. 19, 1996) (rejecting similar special duty claim under Washington law against Tobacco defendants); *Herskovits v. Group Health Cooperative*, 99 Wash.2d 609, 617, 664 P.2d 474 (1983) (holding proximate cause required for claim of breach of special duty).

 In addition, a claim of a breach of a special duty requires "physical harm" to plaintiffs. Restatement (Second) of Torts § 323; *Herskovits*, 99 Wash.2d at 615, 664 P.2d 474; *American Tobacco, Co.*, 1996 WL 931316 at *7 (dismissing claim of breach of special duty for lack of physical harm). This element is also missing in the present case.

### (3) *Unjust Enrichment*

 Plaintiffs allege in Count 8 that defendants have been unjustly enriched by their treatment of smokers. Plaintiffs contend that the defendants owe a duty to the public (including the plaintiffs) not to deceive people about the dangers of smoking. SAC, ¶ 382. They claim that the tobacco companies owed a duty to plaintiffs to research the dangers of smoking and disclose the results. *Id.* However, plaintiffs do not assert that defendants actually had an obligation to pay the medical costs of the smoker-patients treated by the plaintiffs. Without such an allegation, plaintiffs cannot maintain their claim for unjust enrichment. *American Tobacco*, 1996 WL 931316 at *6 (dismissing similar unjust enrichment claim).

Plaintiffs' unjust enrichment claim turns on whether their treatment of smokers benefitted defendants. Washington courts have defined a benefit as any form of advantage:

> A person confers a benefit upon another if he gives to the other possession of or some interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or duty of the other, or in any way adds to the others' security or advantage. He confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss. The word benefit, therefore, denotes any form of advantage.

*American Tobacco Co.*, 1996 WL 931316 at *8 *quoting Chemical Bank v. Washington Public Power Supply Sys.*, 102 Wash.2d 874, 910, 691 P.2d 524 (1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2140, 85 L.Ed.2d 497 (1985) (citations and quotations omitted).

Plaintiffs do not claim to have given the tobacco companies possession of or an in-

terest in services rendered. Plaintiffs provided medical treatment to smokers, and the benefits of that treatment went to the patients, not the defendants. Without alleging that the defendants are responsible for the medical costs of their patients, the alleged benefits that plaintiffs conferred on the defendants are too indirect and speculative to support its unjust enrichment claim under Washington law. *See American Tobacco Co.*, 1996 WL 931316 at \*9; *see also Chemical Bank*, 102 Wash.2d at 910–11, 691 P.2d 524. Plaintiffs cannot maintain an action for unjust enrichment against defendants merely because defendants were incidentally benefitted by their treatment of smokers. *See Oregon Laborers*, 185 F.3d at 968. Without a legal obligation on the part of defendants to pay, the treatment by plaintiffs did not "benefit" the defendants, and the unjust enrichment claim fails. *See id.*

### (4) *Consumer Protection Act*

■ Plaintiffs also seek recovery under the Washington Consumer Protection Act, RCW 19.86.020–030. In order to recover under this claim plaintiffs must allege an injury to their business or property causally related to the alleged unfair act or practice. *Washington State Physicians Ins. Exchange & Ass'n. v. Fisons Corp.*, 122 Wash.2d 299, 312, 858 P.2d 1054 (1993).

■ The alleged injuries to plaintiffs are based on personal injuries to smokers. Plaintiffs allege that the defendants' conspiracy to restrict trade suppressed the development, manufacture, and sale of safer tobacco products. Plaintiffs further allege that the lack of safer tobacco increased the number of smokers seeking treatment at public hospitals, thereby increasing their costs. Expenses for personal injuries are not injuries to business or property under the Washington Consumer Protection Act. *See Northwest Laborers*,

58 F.Supp.2d at 1215; *Fisons*, 122 Wash.2d at 318, 858 P.2d 1054; *Stevens v. Hyde Athletic Industries, Inc.*, 54 Wash. App. 366, 370, 773 P.2d 871 (1989). Judge Dwyer explained in *Northwest Laborers*, 58 F.Supp.2d at 1215, that this general rule "cannot change when the injured person's medical expenses are paid by someone else." The costs derived from these personal injuries do not become less "personal" when borne by plaintiffs in the form of unreimbursed health care services. Thus, these costs cannot be recovered under the Washington Consumer Protection Act.[2]

### (5) *Nuisance*

■ Plaintiffs' twelfth claim alleges that defendants perpetrated a public nuisance. Plaintiffs contend that the defendants' actions endangered the public health, causing the public hospitals (and others) to bear the costs of unreimbursed health care services for tobacco-related diseases. Plaintiffs claim for nuisance fails because plaintiffs cannot demonstrate proximate cause. *Northwest Laborers*, 58 F.Supp.2d at 1215.

### (6) *Conspiracy*

■ Finally, plaintiffs' conspiracy claim fails because there are no underlying illegal acts. In Washington, a civil conspiracy claim must be based on underlying "actionable wrongs," "overt acts," or a "tort working damage to the plaintiffs." *Northwest Laborers*, 58 F.Supp.2d at 1216, *citing W.G. Platts, Inc. v. Platts*, 73 Wash.2d 434, 438–40, 438 P.2d 867 (1968). A conspiracy claim fails if the underlying act or claim is not actionable. *See id.; Wilson v. State*, 84 Wash.App. 332, 350–51, 929 P.2d 448 (1996).

### (E) *Conclusion*

The injuries alleged in this litigation may be recovered by the persons who

---

**2.** The *Fisons* decision does not require a contrary result. In *Fisons,* a physician whose reputation was injured had standing to sue a drug company for unfair and deceptive practices by failing to warn the physician of known dangers of its drug. In *Fisons,* the Court relied on the unique relationship between drug company and physician. Plaintiffs have no similar relationship with the defendants.

were directly harmed by defendants' conduct. Plaintiffs' claims are derivative of the claims of smokers and, under long-standing judicial precedent, cannot be allowed to proceed.

IT IS SO ORDERED.