Singh, J.
After sustaining water damage to their condominium unit and learning that they had a $15,000.00 gap in insurance coverage, unit owners Robert and Muriel Long (“the Longs”) brought suit against their condominium management company, The Niles Company, Inc. (“Niles”) .[2] At trial, a jury found Niles to be negligent in failing to inform the Longs of an increase in the insurance coverage deductible for water damage, and awarded the Longs damages in the amount of $15,000.00. Niles now appeals both the jury’s verdict and the trial court’s denial of its motion for directed verdict and a new trial.
On the evidence at trial, the jury could have found the following facts. As of August 1, 2002, Niles became the property manager for the Spinnaker Island and Yacht Club Association (“Spinnaker”), a condominium complex in Hull. At that time, Spinnaker’s master insurance policy had a $10,000.00 deductible for water damage. Niles employee Paul Tallen (“Tallen”) sent notices to the unit owners if he became aware of a change in the master insurance policy. He understood that it was important for unit owners to be apprised of any such changes so that they could adjust their individual policies in order to be fully covered. On November 14, 2002, Tallen received a facsimile transmission (“fax”) from Spinnaker’s insurance agent proposing a $25,000.00 water damage deductible for the coming year. On November 21, 2002, the new policy went into effect and the deductible increased from $10,000.00 to $25,000.00. Tallen did not send a notice to the unit owners regarding the increased deductible at that time.
A year later, on November 12, 2003, Spinnaker’s insurance agent met with Spinnaker’s board of managers and Tallen to review the insurance renewal. Having learned that the unit owners had not been notified of the increased deductible, the insurance agent advised the board and Tallen that a notice should be sent. The board directed Tallen to issue a notice as soon as possible. Although Tallen stated that he would take care of it, he did not send the notice. In January, 2004, the insurance agent learned that a notice had still not been sent. As a result, on January 6 and 7,2004, the insurance agent sentTallen electronic mail messages (“e-mails”) providing him with a draft notice that he could send out to unit owners. Tallen did not send the notice to the unit owners.
On the evening of January 9, 2004, Mrs. Long arrived at her condominium unit, after several weeks away, to find an alarm sounding from the unit. When she entered the unit, she found that all the pipes had burst and water had frozen in the sinks and *45 toilets. The repairs cost $36,000.00, including $22,000.00 for the plumbing work alone. On January 12, 2004, the Longs learned that insurance would cover the damage only after they paid a $25,000.00 deductible for water loss. The Longs had purchased their second unit after the deductible had been increased. Although they had their own insurance agent and access to all condominium insurance documents, they relied on Niles to apprise them of the need for appropriate insurance coverage. On January 23, 2004, Niles issued a notice to the unit owners advising them to purchase additional insurance to eliminate the $25,000.00 deductible for water damage. Niles indicated that the additional insurance would cost unit owners approximately $20.00 per year.
Niles contends that the trial judge erred in denying its motion for a directed verdict based on the theory that it owed no duty of care to the Longs. Niles specifically argued that there could be no duty of care because there was no physical harm alleged, only economic injury. “The standard applied to a motion for a directed verdict is identical to that applied to a motion for summary judgment for most purposes.” Donaldson v. Farrakhan, 436 Mass. 94, 96 (2002). “The judge must determine, on viewing the evidence in the light most favorable to the nonmoving party, whether a reasonable inference could be drawn in favor of the nonmoving party, or if the moving party is entitled to a judgment as a matter of law.” Id To prevail on their negligence claim, the Longs were required to prove that Niles owed them a duty of reasonable care, that Niles committed a breach of that duty, that damage resulted, and that there was a causal relation between the breach of duty and the damage. See Leaveitt v. Brockton Hosp., Inc., 454 Mass. 37, 39 (2009). Whether a duty exists is a question of law. Id. at 40.
After it had been established that Niles had no contractual duty to provide the Longs with notice of insurance coverage deductible increases,[3] the Longs pursued the theory that Niles had voluntarily assumed this duty. “Massachusetts recognizes that ‘a duty voluntarily assumed must be performed with due care,’ and [the Supreme Judicial Court has] approved the principles pertaining to voluntary assumption of a duty as set forth in the RESTATEMENT (SECOND) OF TORTS §323 (1965).” Cottam v. CVS Pharmacy, 436 Mass. 316, 323 (2002), quoting Mullins v. Pine Manor College, 389 Mass. 47, 52 (1983). Section 323 provides:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other’s person or things, is subject to liability to the other for phyácal harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other’s reliance upon the undertaking (emphasis added).
Id. Thus, tort liability for a voluntarily assumed duty is limited to physical harm. “Physical harm” is the “physical impairment of the human body, ... or of land or chattels.” See Payton v. Abbott Labs, 386 Mass. 540, 545 n.4 (1982), quoting *46 RESTATEMENT (SECOND) OF TORTS §7 (3) (1965). As the harm suffered by the Longs, a gap in insurance coverage, was not physical, it was not the type of harm for which recovery may be had under a theory of breach of a voluntarily assumed duty."[4]
In requiring reasonable care in gratuitous undertakings, tort law enforces performance in the absence of available contract remedies. D.B. DOBBS, TORTS §320, at 368 (2000). However, this backup enforcement operates only where the defendant’s breach results in physical harm. Id. As a matter of policy, where the “promise is one about safety of persons and property, not about an economic exchange ..., [t]he moral understanding and expectation of the community would require its performance and reasonable people would perform it.” Id. The limitation against recovery for undertakings where the expectancy is economic protection, as it was in this case, prevents the majority of classic contract cases from being litigated as torts. See id Thus, the law seeks to enforce gratuitous undertakings only where absolutely necessary, so as not to punish (and therefore discourage) those who do good deeds without any obligation to do so. Indeed, §323, which seeks to limit liability for those who voluntarily assume a duty, is often referred to as the “good Samaritan doctrine.” See Thorson v. Mandell, 402 Mass. 744, 748 (1988).[5]
The bar on recovery for economic losses from breaches of voluntarily assumed duties is also consistent with the economic loss doctrine. See generally Cumis Ins. Soc’y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 469-470 (2009). While the economic loss doctrine generally bars the recovery of purely economic losses resulting from negligence in Massachusetts, see FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993), several exceptions have been carved out. See Aldrich v. ADD Inc., 437 Mass. 213, 222 (2002), citing Priority Finishing Corp. v. LAL Constr. Co., 40 Mass. App. Ct. 719, 721 (1996) (allowing recovery for economic losses resulting from physical damage to property caused by defendant’s negligence); Clark v. Rowe, 428 Mass. 339, 342-343 (1998) (economic loss doctrine not applied to negligence of fiduciary); Nota Constr. Corp. v. Keyes Assocs., Inc., 45 Mass. App. Ct. 15, 20 (1998) (allowing recovery for economic losses resulting from misrepresentation). The exceptions to the economic loss doctrine do not apply here. Niles’ failure to inform the Longs about the deductible increase caused no physical damage to the Longs’ property. There was also no fiduciary relationship between Niles and the Longs. Finally, Niles *48 made no misrepresentation to the Longs.[6]
In sum, none of the exceptions to the economic loss doctrine apply in this case. Instead, this case falls squarely within the limitation on recovery of damages for economic harm resulting from negligent performance of a gratuitously assumed duty. Niles’ motion for a directed verdict on the Longs’ negligence claim should have been allowed.[7]
Judgment for the plaintiffs is vacated, the denial of the defendant’s motion for a directed verdict is reversed, and judgment shall be entered for the defendant.
So ordered.

 Niles, in turn, brought claims against the condominium board of managers, the unit owners association, and the association’s insurance agent; however, those parties were dismissed prior to trial.

 Niles’ motion for summary judgment on the Longs’ claims for breach of contract and negligent management was allowed.

 Massachusetts cases allowing recovery for breach of a voluntarily assumed duty involve physical harm. See Cottam, supra at 319 (impotence resulting from breach of voluntarily assumed duty to warn of risks associated with prescription drugs); Mullins, supra at 49-50 (rape resulting from breach of voluntarily assumed duty to provide security for college dormitory). See also Fieldwork Boston, Inc. v. United States, 344 F. Supp. 2d 257, 264 (D. Mass. 2004) (rejecting claim for tort-based indemnity on theory of voluntarily assumed duty where there was no physical harm); Medical Professional Mut. Life Ins. Co. v. Steinberg, Suffolk Superior Court, No. 03-5746-BLS2 (Feb. 23, 2006) (dismissing claim against insurance company for negligent failure to fulfill voluntarily assumed duly to remind plaintiff to purchase reporting endorsement resulting in lack of insurance coverage, citing no physical harm).

 In the overwhelming majority of jurisdictions that have considered the issue, courts have denied recovery for economic losses caused by the breach of a voluntarily assumed duty. See Shaner v. United States 976 F.2d 990, 994 (6th Cir. 1992) (recovery denied under Ohio law, noting that “Good Samaritan Doctrine is limited to physical harm,” and citing §323); Love v. United States 915 F.2d 1242, 1248 (9th Cir. 1989) (affirming, under Montana law, trial courts dismissal of claim for recovery of economic loss, citing lack of physical injury required by §323); Platinum Community Bank v. Marshall Invs. Corp., U.S. Dist. Ct., No. 06-C-3544, slip op. at 21 (N.D. Ill. 2008) (“This court has not found... any cases in which the voluntary undertaking doctrine has been applied to claims alleging economic harm.”); Safari Aviation, Inc. v. United States U.S. Dist. Ct., No. 07-00078 ACK-KSC, slip op. at 9 (D. Haw. 2008) (denying, under Alaska law, claim for negligent licensing resulting in inability to pursue business venture on basis that “the Good Samaritan doctrine [as stated in §323 and §324A (voluntary undertaking for benefit of third party)] is applicable in situations only where the undertaking results in physical harm to person or property.... The Court has not found a single case in Alaska where the Good Samaritan doctrine was applied to an economic injury” [citation omitted]); United Healthcare Ins. Co. v. AdvancePCS, U.S. Dist. Ct., No. 01-2320, slip op. at 12-13 (D. Minn. 2002) (finding that plain text of §323 denies recovery for economic loss and rejecting Arizona analysis of §323 to the contrary); Association of Washington Pub. Hosp. Dists. v. Philip Monis Inc., 79 F. Supp. 2d 1219, 1228 (W.D. Wash. 1999) (hospital districts’ claims for unreimbursed health care costs denied because claim of breach of special duty requires “physical harm,” citing §323); Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc., 17 F. Supp. 2d 1170, 1182 (D. Or. 1998) (court dismissed plaintiffs claim that defendant breached voluntarily assumed duty to conduct and report medical research, noting that “[w]ith one exception..., every federal and state court addressing claims of this kind as against the tobacco industry have entered dismissal orders based upon the absence of physical harm, a necessary element under Sections 323 and 324A of the RESTATEMENT OFTORTS (SECOND)”); Felton v. Schaeffer, 229 Cal. App. 3d 229, 238 (1991) (denying claim for loss of employment opportunity against doctor who erroneously reported to plaintiffs prospective employer that he was not fit for employment on ground that case outside ambit of §323 because doctor’s negligence caused no physical injury); Theisen v. Covenant Med Ctr., Inc., 636 N.W.2d 74, 82 (Iowa 2001) (denying claim of wrongful discharge based on negligent investigation into alleged employee misconduct, because plaintiff suffered no physical harm as required by §323 and §324A); Carlotti v. Employees of General Elec. Federal Credit Union No. 1161, 717 A.2d 564, 566-567 (Pa Super. 1998) (dismissing plaintiffs claim that credit union, which undertook to provide insurance, negligently Med to advise him of limitations of insurance, because no physical harm resulted); King v. Graham Holding Co., 762 S.W.2d 296, 299-300 (Tex. App. 1988) (“ [S] ection 323, by its own terms, applies only to physical harm, which was not alleged”); Hatleberg v. Norwest Bank Wisconsin, 283 Wis. 2d 234, 250 (2005) (“Despite the voluminous number of cases applying this section [§323] of the RESTATEMENT] we have found no cases... holding that purely economic harm satisfies the ‘physical harm’ requirement”).
Courts in the few jurisdictions that have allowed recovery for economic loss premised upon the breach of a voluntarily assumed duty have done so, inexplicably, without any discussion of the physical harm requirement of §323. See McCutchen v. Hill, 147 Ariz. 401, 404 (1985); Blackmon v. Nelson, Hesse, Cyril, Weber & Sparrow, 419 So. 2d 405, 406 (Fla. Dist. Ct. App. 1982); Schwartz v. Greenfield, Stein & Weisinger, 396 N.Y.S.2d 582, 585 (Sup. Ct. 1977).

 In his memorandum denying summary judgment on the negligence issue, the judge reasoned: “It would be quite remarkable, if A compensated B for B to bring to the attention of A any deductible change so that A could recalibrate its insurance with C and B negligently failed to alert A causing A a financial loss, only to have the law declare that A’s loss is not recoverable from B....” However, if B’s duty to A was in consideration of A compensating B, then A’s remedy would lie in breach of contract, not tort. Here, Niles was not compensated to notify the Longs of their insurance needs; there was no contractual obligation. Rather, there was simply a gratuitously assumed undertaking, which may not be enforced as a duty unless its breach resulted in physical harm. RESTATEMENT (SECOND) OF TORTS §323 (1965).

 Given our ruling, it is unnecessary to address any remaining issues.