241 F.3d 696 (9th Cir. 2001)
 ASSOCIATION OF WASHINGTON PUBLIC HOSPITAL DISTRICTS, a Washington unincorporated association; ADAMS COUNTY PUBLIC HOSPITAL DISTRICT NO. 2; ADAMS COUNTY PUBLIC HOSPITAL DISTRICT NO. 3; AFFILIATED HEALTH SERVICES, a general partnership of Skagit County Public Hospital District No. 1 and Skagit & Whatcom Counties Public Hospital District No. 304; CHELAN COUNTY PUBLIC HOSPITAL DISTRICT NO. 2; CLALLAM COUNTY PUBLIC HOSPITAL DISTRICT NO. 1; CLALLAM COUNTY PUBLIC HOSPITAL DISTRICT NO. 2; DOUGLAS, GRANT, LINCOLN, OKANOGAN COUNTIES PUBLIC HOSPITAL DISTRICT NO. 6; FERRY COUNTY PUBLIC HOSPITAL DISTRICT NO. 1, GARFIELD COUNTY PUBLIC HOSPITAL DISTRICT; GRANT COUNTY PUBLIC HOSPITAL DISTRICT NO. 1; GRANT COUNTY PUBLIC HOSPITAL DISTRICT NO. 2; GRANT COUNTY PUBLIC HOSPITAL DISTRICT NO. 3; GRAYS HARBOR COUNTY PUBLIC HOSPITAL DISTRICT NO. 1; JEFFERSON COUNTY PUBLIC HOSPITAL DISTRICT NO. 2; KENNEWICK PUBLIC HOSPITAL DISTRICT; KING COUNTY PUBLIC HOSPITAL DISTRICT NO. 1; KING COUNTY PUBLIC HOSPITAL DISTRICT NO. 2; KITTITAS COUNTY PUBLIC HOSPITAL DISTRICT NO. 1; LEWIS COUNTY PUBLIC HOSPITAL DISTRICT NO. 1; MASON COUNTY PUBLIC HOSPITAL DISTRICT NO. 1; OKANOGAN AND DOUGLAS COUNTIES PUBLIC HOSPITAL DISTRICT NO. 1; OKANOGAN COUNTY PUBLIC HOSPITAL DISTRICT NO. 3; OKANOGAN COUNTY PUBLIC HOSPITAL DISTRICT NO. 4; PACIFIC COUNTY PUBLIC HOSPITAL DISTRICT NO. 2; PACIFIC COUNTY PUBLIC HOSPITAL DISTRICT NO. 3; PEND OREILLE COUNTY PUBLIC HOSPITAL DISTRICT NO. 1; PROSSER PUBLIC HOSPITAL DISTRICT; SKAGIT COUNTY PUBLIC HOSPITAL DISTRICT NO. 1; SKAGIT COUNTY PUBLIC HOSPITAL DISTRICT NO. 2; SKAGIT AND WHATCOM COUNTIES PUBLIC HOSPITAL DISTRICT NO. 304; SNOHOMISH COUNTY PUBLIC HOSPITAL DISTRICT NO. 1; SNOHOMISH COUNTY PUBLIC HOSPITAL DISTRICT NO. 2; SNOHOMISH COUNTY PUBLIC HOSPITAL DISTRICT NO. 3; WHITMAN COUNTY PUBLIC HOSPITAL DISTRICT NO. 1-A; WHITMAN COUNTY PUBLIC HOSPITAL DISTRICT NO. 3, Plaintiffs-Appellants,
v.
PHILIP MORRIS INCORPORATED; RJ REYNOLDS TOBACCO COMPANY; BROWN & WILLIAMSON TOBACCO CORPORATION; BRITISH AMERICAN TOBACCO PLC; B.A.T. INDUSTRIES PLC; BRITISH AMERICAN TOBACCO INVESTEMENTS LIMITED, formerly known as British-American Tobacco Company Limited; LORILLARD TOBACCO COMPANY; LIGGETT GROUP, INC.; LIGGETT & MYERS, INC.; UNITED STATES TOBACCO COMPANY; THE TOBACCO INSTITUTE, INC.; THE COUNCIL FOR TOBACCO RESEARCH USA, INC.; SMOKELESS TOBACCO COUNCIL, INC.; HILL & KNOWLTON, INC.; UNKNOWN CORPORATIONS A-Z, Defendants-Appellees.
 No. 00-35117
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted December 14, 2000
Filed February 22, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Michael K. Vaska (argued), Bradley J. Berg, Steven G. Jones, and Chryssa V. Deliganis, Foster Pepper & Shefelman PLLC, Seattle, Washington, for the plaintiffs-appellants.
 Herbert M. Wachtell (argued), Wachtell, Lipton, Rosen & Katz, New York, New York, and John W. Phillips, Leonard J. Feldman, and Judith H. Ramseyer, Heller Ehrman White & McAuliffe LLP, Seattle, Washington, for defendant-appellee Philip Morris Incorporated; Bradley S. Keller, Byrnes & Keller, LLP, Seattle, Washington, and H. Joseph Escher, III and Peter J. Busch, Howard Rice Nemerovski Canady Falk & Rabkin, San Francisco, California, for defendant-appellee R.J. Reynolds Tobacco; John A. Tondini, Byrnes & Keller, LLP, Seattle, Washington, and Jeffrey Davidson and Tony L. Richardson, Kirkland & Ellis, Los Angeles, California, for defendant-appellee Brown & Williamson Tobacco Corp.; Christopher W. Tompkins, Betts Patterson & Mines, P.S., Seattle, Washington, and Jeffrey S. Nelson and Tina M. Schaefer, Shook, Hardy & Bacon L.L.P., Kansas City, Missouri, for defendant-appellee Lorillard Tobacco Company; Thomas R. Merrick, Bullivant, Houser, Pendergrass & Hoffman, Seattle, Washington, for defendant-appellee British American Tobacco Co., Ltd.; Delber D. Miller and Heidi Bateman, Miller Bateman LLP, Seattle, Washington, for defendant-appellee United States Tobacco Company; John D. Wilson and David M. Jacobi, Wilson Smith Cochran & Dickerson, Seattle, Washington, for defendant-appellee Smokeless Tobacco Council, Inc.; James R. Murray and Franklin D. Cordell, Gordon Murray Tilden, Seattle, Washington, for defendant-appellee The Tobacco Institute, Inc.; James H. Jordan, Jr., Miller, Nash, Wiener, Hager & Carlsen, Seattle, Washington, for defendant-appellee The Council for Tobacco Research U.S.A., Inc.; Thomas J. Brewer and Steven T. Seward, Wickwire, Green, Crosby, Brewer & Seward, Seattle, Washington, for defendant-appellee Hill & Knowlton, Inc.
 Appeal from the United States District Court for the Western District of Washington Thomas S. Zilly, District Judge, Presiding. D.C. No.CV-98-01675-TSZ
 Before: Robert Boochever, Diarmuid F. O'Scannlain, and A. Wallace Tashima, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must decide whether public hospital districts may bring federal and state claims against tobacco firms to recover their unreimbursed costs for treating patients suffering from tobacco-related illnesses.
 
 
 2
 * The Association of Washington Public Hospital Districts, along with the Association's individual member districts (collectively, "Hospital Districts"), appeal from the district court's dismissal of their federal antitrust, Racketeer Influenced and Corrupt Organizations Act ("RICO"), and supplemental state law claims against a number of tobacco companies and tobacco industry organizations (collectively, "Tobacco Firms"). The Hospital Districts are political subdivisions of the State of Washington which are required by state and federal law to provide health care services to the general public regardless of their patients' ability to pay.
 
 
 3
 The Hospital Districts allege that the Tobacco Firms have engaged in a half-century conspiracy against the public generally and the health care industry in particular. According to the Hospital Districts, the Tobacco Firms have conspired to misrepresent and to conceal the addictive nature of nicotine and the health risks associated with tobacco use, promoting their alleged deception through propaganda disguised as independent scientific research while endeavoring to suppress legitimate scientific research that demonstrates the dangers of tobacco use. The Hospital Districts further claim that the Tobacco Firms have conspired to suppress competition to develop less harmful nicotine and tobacco products and have manipulated the levels of nicotine in their products to ensure continuing addiction. Finally, the Tobacco Firms have allegedly conspired to refrain from making any claims concerning the relative health superiority of specific tobacco products.
 
 
 4
 According to the Hospital Districts, the Tobacco Firms' unlawful conduct has caused them considerable financial harm. But for the Tobacco Firms' conspiracy to suppress competition, they allege, less harmful tobacco products would have been developed which would have garnered a substantial market share. The Hospital Districts maintain that they themselves were potential consumers of such products, as they could have purchased them for the use and treatment of their patients suffering from nicotine addiction. Patients who used these less harmful products presumably would have experienced fewer tobacco-related health illnesses, thereby reducing the Hospital Districts' costs for treating such illnesses. Further, the Tobacco Firms' alleged conspiracy to spread misinformation regarding the adverse health effects of tobacco use, the addictive nature of nicotine, and the Tobacco Firms' own manipulation of nicotine levels allegedly prevented the Hospital Districts from instituting more effective smoking cessation programs. Such misinformation also induced the Hospital Districts' patients to use tobacco products. Thus, but for the Tobacco Firms' alleged conspiracy to deceive the public, the Hospital Districts could have assisted more patients to overcome their addiction to nicotine products, again reducing their costs for treating tobacco-related illnesses.
 
 
 5
 The Hospital Districts commenced this action against the Tobacco Firms to recover their increased costs for treating their patients' tobacco-related illnesses caused by the Tobacco Firms' unlawful conduct, alleging federal antitrust and RICO violations; state common law claims for fraudulent misrepresentation, fraudulent concealment, breach of special duty, unjust enrichment, civil conspiracy, and public nuisance; and violations of the Washington Unfair Business Practices Act-Consumer Protection Act, Wash. Rev. Code Ann. SS 19.86.020-030. In a carefully reasoned decision, the district court dismissed all claims with prejudice for failure to state a claim, relying on Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc., 185 F.3d 957 (9th Cir. 1999). The court held that the Hospital Districts did not have antitrust or RICO standing because their claimed damages were not proximately caused by the Tobacco Firms' unlawful conduct, but were instead derivative of the personal injuries of smokers afflicted by tobacco-related illnesses. Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc., 79 F. Supp. 2d 1219, 1224 (W.D. Wash. 1999). The court also held that the Hospital Districts' antitrust claims were barred for lack of antitrust injury under Am. Ad Mgmt Inc. v. GTE of Cal., 190 F.3d 1051, 1057 (9th Cir. 2000), because the Hospital Districts did not experience their injuries in the market where competition was being restrained. Ass'n of Wash. Pub. Hosp. Dists., 79 F. Supp. 2d at 1226. Finally, the district court dismissed the Hospital Districts' state common law claims for lack of proximate cause, id. at 1228-29, and dismissed their Consumer Protection Act claims under Wash. State Physi-cians Ins. Exch. & Ass'n. v. Fisons Corp., 858 P.2d 1054, 1060-61 (Wash. 1993), for failure to allege an injury to "business or property," Ass'n of Wash. Pub. Hosp. Dists., 79 F. Supp. 2d at 1229. This appeal followed.
 
 II
 
 6
 We must first decide whether the district court erred in dismissing the Hospital Districts' federal antitrust and RICO claims.
 
 
 7
 * Section 4 of the Clayton Act provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" may bring a private damages suit. 15 U.S.C. S 15. Similarly, 18 U.S.C. S 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962," the substantive provisions of RICO, may bring a private damages suit. 18 U.S.C. S 1964(c). Nonetheless, the courts have recognized that private antitrust and RICO actions are subject to traditional "judicial tools to limit a person's responsibility for the consequences of that person's own acts." Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992). Among these limitations is the requirement that the alleged violations of the law be the "proximate cause" of the injury suffered. Id. (RICO); Blue Shield v. McCready, 457 U.S. 465, 477 (1982) (antitrust).
 
 
 8
 A direct relationship between the injury and the alleged wrongdoing has been one of the "central elements " of the proximate causation determination, and "a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [ ] generally [has been] said to stand at too remote a distance to recover." Oregon Laborers, 185 F.3d at 963 (quoting Holmes, 503 U.S. at 268-69 (internal citations omitted)). To determine whether an injury is "too remote" to allow recovery under both the antitrust laws and RICO, a three-factor test is applied:"(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries." Id. (citing Holmes, 503 U.S. at 269-70, and Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters ("AGC "), 459 U.S. 519, 545(1983)).
 
 
 9
 In Oregon Laborers, we considered the antitrust and RICO proximate cause requirement in the tobacco litigation context. There, five union health and welfare trust funds that provide health care benefits to their beneficiaries brought suit against various tobacco firms, alleging federal antitrust and RICO violations as well as state common law and statutory claims. The trusts' complaint was predicated on the same conspiracy allegations as are at issue here. Id. at 961. Like the Hospital Districts, the trusts sought to recover their increased expenditures for treatment of their beneficiaries' tobacco-related illnesses that allegedly resulted from the tobacco defendants' wrongdoing. Id. at 962.
 
 
 10
 We held that the trusts' claims failed as a matter of law. We explained that the trusts lacked both antitrust and RICO standing, as they could not establish that their injuries were proximately caused by the tobacco defendants' wrongdoing. Id. at 963-66. We observed that the trusts' injuries were entirely derivative in nature, for "without any injury to smokers, plaintiffs would not have incurred the additional expenses in paying for the medical expenses of those smokers." Id. at 963. Thus, there was no "direct link" between the defendants' alleged wrongdoing and the trusts' damages, and the proximate cause requirement was not met. Id. at 964.
 
 
 11
 We then applied the three-factor AGC/Holmes proximate cause test. We held that the first factor weighed against the trusts because there existed more directly injured victims, in the form of the smokers themselves, who would be motivated to punish the defendants for their wrongdoing. Id. We recognized that such directly injured victims could not bring suit under RICO or the antitrust laws, given that they suffered personal injuries rather than the requisite "injury to business or property." Id. Nonetheless, we rejected the trusts' argument that this weighed in favor of standing. Although smokers could not vindicate the public interest in antitrust enforcement, they could bring other claims to deter the defendants' wrongdoing. Id. Next, we observed that the trusts' damages were entirely speculative in nature, as they would involve proof, ultimately, of how smokers themselves would have changed their behavior in the absence of the defendants' wrongdoing. Id. at 965. We remarked that"[t]he difficulty of ascertaining the damages attributable to defendants' alleged wrongful conduct and the complexity involved in calculating these damages weigh heavily, if not dispositively, in favor of barring plaintiffs' actions." Id. Finally, we noted that there was the potential for duplicative recovery given the possibility that smokers might bring suit against the defendants for their personal injuries under state law theories. Id. at 966.
 
 B
 
 12
 All other Courts of Appeals that have addressed the issue have agreed that union trust funds lack standing to bring antitrust and RICO claims against the tobacco industry to recover their increased expenditures for treating tobacco-related illnesses.[1] The fact that the Hospital Districts are health care providers rather than third party health care payers like the union trusts in Oregon Laborers is immaterial for purposes of RICO and antitrust standing. The ratio decidendi of Oregon Laborers and the union health trust cases from our sister circuits is fatal to the Hospital Districts' claims.
 
 
 13
 Like the union trust funds in Oregon Laborers, the Hospital Districts are attempting to recover damages that are derivative of the injuries suffered by smokers. The district court properly noted that "[w]ithout any injury to smokers, plaintiffs would not have incurred the additional expenses in paying for the medical expenses of those smokers. " Ass'n of Wash. Pub. Hosp. Districts, 79 F. Supp. 2d at 1224. Thus, there is no direct link between the alleged misconduct of the Tobacco Firms and the Hospital Districts' claimed damages.
 
 
 14
 As we did in Oregon Laborers , the district court examined the Hospital Districts' claims according to the proximate cause factors set forth in AGC and Holmes: the directness of the injury, the speculative nature of the harm, and the risk of duplicative recovery and complexity of apportioning damages. Id. at 1224-25. The court correctly concluded that each of these factors weighs strongly against according the Hospital Districts antitrust and RICO standing. Id. at 1224-26, 1227. Smokers are the "more direct victims" who can vindicate the public interest in deterring the Tobacco Firms' wrongful conduct. See Oregon Laborers, 185 F.3d at 964. The difficulty of ascertaining the Hospital Districts' damages attributable to such wrongful conduct is just as great here as it was in Oregon Laborers. Calculation of the Hospital Districts' damages would entail considerable speculation regarding how individuals' tobacco usage would have changed in the event that accurate information and less harmful tobacco products were available. See id. at 965. Finally, the same potential for duplicative recovery is present given the possibility that smokers themselves could bring state law claims against the Tobacco Firms to recover for their personal injuries.[2] See id. at 966.
 
 C
 
 15
 The Hospital Districts offer several possible bases on which to distinguish Oregon Laborers. The common theme underlying the Hospital Districts' contentions is that looser RICO and antitrust standing rules apply to health providers due to their special relationship with their patients, a relationship that third party payers such as union health trusts lack.[3] The differences between health care providers and third party payers, however, do nothing to remedy the fundamental defect with the Hospital Districts' claims: they are attempting to recover for harm that is derivative of personal injuries visited upon their patients. Their claims are just as remote, and would occasion the same unfounded speculation concerning damages, as the union trusts' claims in Oregon Laborers. Thus, the Hospital Districts' attempts to distinguish Oregon Laborers are unavailing.
 
 
 16
 The Hospital Districts cite McCready, 457 U.S. 465, as establishing a special rule of antitrust standing for health care providers. The Hospital Districts are incorrect. In McCready, a group health plan subscriber brought an antitrust suit against the plan, alleging that it conspired with psychiatrists to restrain competition in the psychotherapy market. Id. at 467. The plan reimbursed its subscribers for psychotherapy treatment provided by psychiatrists, but not psychologists. The plaintiff received unreimbursed treatment from a psychologist. Id. While recognizing that the conspiracy was targeted at psychologists rather than plan subscribers, the Court nevertheless held that the plaintiff had antitrust standing, explaining that "[d]enying reimbursement to subscribers for the cost of treatment was the very means by which it is alleged that Blue Shield sought to achieve its illegal ends." Id. at 479. The Court further explained that the plaintiff's injury "was inextricably intertwined with the injury the conspirators sought to inflict on psychologists . . . ." Id. at 484.
 
 
 17
 McCready does not establish a special standing rule for health care providers, as the Hospital Districts would read it, nor does it dispense with the general requirement that antitrust and RICO plaintiffs must be directly harmed by the defendant's wrongful conduct. As the Court subsequently explained in AGC, in McCready "the actual plaintiff was directly harmed by the defendants' unlawful conduct." AGC, 459 U.S. at 529 n.19. She was denied reimbursement for her psycho-therapy expenses. Her damages were not derivative of the harm the conspirators inflicted upon psychologists. In fact, the Court noted that McCready's psychologist was fully paid for his services and was in no way injured by Blue Shield's refusal to reimburse McCready for the cost of such services. McCready, 457 U.S. at 475. Neither McCready nor any of the other cases cited by the Hospital Districts provides any support for the Hospital Districts' attempt to recover for their remote harm.[4]
 
 
 18
 Similarly, the fact that the Hospital Districts allege that they were potential purchasers of less harmful tobacco and nicotine delivery products does not render their claims any less remote. The harm suffered by the Hospital Districts as potential purchasers of products whose development the Tobacco Firms allegedly conspired to suppress is derivative of the harm suffered by their patients, who were the potential users of such products. Had such less harmful products been available, the Hospital Districts' patients might have used them, and in turn might have suffered from fewer to baccorelated diseases, with the result that the Hospital Districts might have incurred lower tobacco-related treatment costs. This is the very essence of a derivative injury.
 
 D
 
 19
 The Hospital Districts' antitrust claims fail on a second, independent ground: failure to allege an antitrust injury. An "antitrust injury" is an injury of "the type that the antitrust statute was intended to forestall." AGC, 459 U.S. at 540. "The requirement that the alleged injury be related to anticompetitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors." Bhan v. NME Hosps., Inc., 772 F.2d 1467, 1470 (9th Cir. 1985). Further, "[a]ntitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained. Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." Am. Ad Mgmt., Inc., 190 F.3d at 1057.
 
 
 20
 Although the Hospital Districts allege that they are potential participants in the nicotine delivery market, and this is the market where competition allegedly has been restrained, the district court ruled that they nonetheless failed to state an antitrust injury. The court reasoned that the Hospital Districts' injuries were not experienced in the nicotine delivery market, but rather in the health care market. We agree. The essence of the Hospital Districts' allegations is that the Tobacco Firms' conspiracy to suppress the development of less harmful tobacco products indirectly resulted in the Districts' incurring increased health care expenses. These expenses simply cannot be characterized as injuries that the Hospital Districts experienced in the nicotine delivery market. See Serv. Employees Int'l Union Health & Welfare Fund v. Philip Morris Inc., 83 F. Supp. 2d 70, 90 (D.D.C. 1999) (holding that plaintiff union health trusts did not suffer an antitrust injury, notwithstanding their claim to be potential purchasers of nicotine replacement products, because their asserted "infrastructure damages" "are not the type that would result from anticompetitive activity in the nicotine products market . . . .").
 
 
 21
 Accordingly, the district court properly dismissed the Hospital Districts' federal RICO and antitrust claims.[5]
 
 III
 
 22
 We must next decide whether the district court properly dismissed the Hospital Districts' state law claims.
 
 
 23
 * The Hospital Districts brought suit against the Tobacco Firms under the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code Ann. SS 19.86.020[6] and 19.86.030.[7] The CPA provides a cause of action to "[a]ny person who is injured in his or her business or property by a violation of" the substantive provisions of the CPA. Wash. Rev. Code Ann. S 19.86.090; Wash. State Physicians Ins. Exch. & Ass'n. v. Fisons Corp., 858 P.2d 1054, 1060 (Wash. 1993). Expenses for personal injuries are not injuries to business or property under the CPA. Id. at 1064.
 
 
 24
 The district court held that the Hospital Districts failed to meet such "business or property" requirement because their claimed injuries were predicated on personal injuries to smokers. Ass'n of Wash. Pub. Hosp. Dists., 79 F. Supp. 2d at 1229. The district court observed that smokers themselves could not recover their own smoking-related medical expenses under the CPA; accordingly, the mere fact that a third party pays for their medical treatment should not transform such medical expenses into business or property harm recoverable under the CPA. Id.
 
 
 25
 We came to the same conclusion in Oregon Laborers, where we held that union trusts could not recover their expenses incurred to treat tobacco-related illnesses under Oregon's Unfair Trade Practices Act ("UTPA"), Or. Rev. Stat. S 646.638(1). Like the Washington CPA, "any person who suffers any ascertainable loss of money or property, real or personal, as a result" of the substantive provisions of the UTPA has standing to bring suit under the Oregon statute. Or. Rev. Stat. S 646.638(1). Again like the Washington CPA, the Oregon UTPA does not permit recovery for personal injuries. Gross-Haentjens v. Leckenby, 589 P.2d 1209, 1210-11 (Or. Ct. App. 1979) ("[W]e hold that ORS 646.638 of the Oregon Unlawful Trade Practices Act was not intended by the legislature to create such a new cause of action for personal injuries."). In rejecting the union trusts' claims under the UTPA, we observed that "[p]laintiffs' damages--expenses to treat smokers' personal injuries--are clearly predicated upon `personal injury' and are therefore unrecoverable under the UPTA." Oregon Laborers, 185 F.3d at 968.[8]
 
 
 26
 In light of the similarity between the Washington and Oregon consumer protection statutes, we hold that Oregon Laborers bars the Hospital Districts' CPA claim to recover for their unreimbursed expenses treating their patients' smoking related illnesses.
 
 
 27
 The Hospital Districts' CPA claim fails as a matter of law for the additional reason that, as discussed above, the Tobacco Firms' unlawful conduct was not the proximate cause of the Hospital Districts' injuries. Proximate cause is an element of a claim under the CPA. Fisons Corp. , 858 P.2d at 1062. The Washington courts are directed to interpret the CPA in light of federal court decisions interpreting federal antitrust law. Wash. Rev. Code Ann. S 19.86.920; Fisons Corp., 858 P.2d at 1064. Further, "any departure from federal law . . . must be for a reason rooted in [Washington] statutes or case law and not in general policy arguments that th[e] court would weigh if the issue came before [it ] as matter of first impression." Blewett v. Abbott Labs. , 938 P.2d 842, 846 (Wash. Ct. App. 1997), review denied, 950 P.2d 475 (Wash. 1998). The Hospital Districts have failed to point to any reason "rooted in state statutes or case law" that would support our departure from federal antitrust proximate cause principles when analyzing the proximate cause requirement under the CPA.
 
 
 28
 Accordingly, we affirm the district court's dismissal of the Hospital Districts' CPA claim.
 
 B
 
 29
 Finally, we must consider whether the district court properly dismissed the Hospital Districts' Washington state common law claims. Only the Hospital Districts' fraudulent concealment, fraudulent misrepresentation, and nuisance claims are before us.[9] Proximate cause is an element of each of these claims under Washington law. Amtruck Factors, Div. of Truck Sales, Inc. v. Int'l Forest Prods., 795 P.2d 742, 746 (Wash. Ct. App. 1990) (observing that proximate cause is an essential element of a fraud claim under Washington law);
 
 
 30
 DeYoung v. Cenex Ltd., 1 P.3d 587, 590 (Wash. Ct. App. 2000) (recognizing that proximate cause is an element of a nuisance claim). Washington courts have defined proximate cause in a manner consistent with the common law "directness" requirement, as a cause "which, in a direct sequence unbroken by any new independent cause, produces the injury complained of, and without which such injury would not have happened." Fisher v. Parkview Props., Inc. , 859 P.2d 77, 82 (Wash. Ct. App. 1993) (citing Alger v. Mukilteo , 730 P.2d 1333, 1336 (Wash. 1987); Hartley v. State, 698 P.2d 77, 83 (Wash. 1985)) (emphasis added).
 
 
 31
 The Hospital Districts' common law claims thus fail for the same reasons that their federal antitrust and RICO claims failed: the Tobacco Firms' unlawful conduct was not the proximate cause of their injuries. The proximate cause test for federal antitrust and RICO standing is the common law proximate cause test. AGC, 459 U.S. at 531; Holmes, 503 U.S. at 268-69; Laborers Local 17 v. Philip Morris, Inc., 191 F.3d 229, 234 (2d Cir. 1999) ("To determine in a given case whether proximate cause is present [for purposes of RICO claims], common law principles are applied."). Accordingly, the district court correctly dismissed the Hospital Districts' fraudulent concealment, fraudulent misrepresentation and nuisance claims. Oregon Laborers, 185 F.3d at 968 ("[F]or the same reasons that proximate cause did not exist for plaintiffs' RICO and antitrust claims, proximate cause is lacking for their fraud claim"). See also Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 934-35 (3d Cir. 1999) ("The same principles that lead us to conclude that plaintiffs' antitrust and RICO claims were properly dismissed lead to the inevitable conclusion that their state law claims must also fail . . . . Just as we have found the link between defendants' alleged fraud--providing false information regarding the safety of their products--and plaintiffs' alleged injuries too attenuated to support a RICO claim, we also find the link too remote to support a common-law fraud claim."); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 445-46 (3d Cir. 2000) (dismissing state claims based on the "same principles that lead us to conclude that plaintiffs' antitrust and RICO claims were properly dismissed": lack of proximate cause).
 
 IV
 
 32
 For the foregoing reasons, the judgment of the district court is
 
 AFFIRMED.[10]
 
 
 Notes:
 
 
 [1]
 See United Food & Commercial Workers v. Philip Morris, Inc., 223 F.3d 1271 (11th Cir. 2000); Texas Carpenters Health Benefit Fund v. Philip Morris, Inc., 199 F.3d 788 (5th Cir. 2000); Int'l Bhd. of Teamsters v. Philip Morris, Inc., 196 F.3d 818 (7th Cir. 1999); Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc. , 171 F.3d 912 (3d Cir. 1999); Laborers Local 17 v. Philip Morris, Inc. , 191 F.3d 229 (2d Cir. 1999).
 
 
 [2]
 The Hospital Districts contend that the risk of duplicative recovery here is greatly reduced because, under the terms of the Master Settlement Agreement between certain states, including Washington, and the tobacco industry, any recovery by the Hospital Districts would be offset by a corresponding reduction in Washington's award under the Master Settlement Agreement. Assuming, arguendo, that this is accurate, it has no bearing on the possibility of duplicative recovery in the event that individual smokers who have been patients of the Hospital Districts bring suit against the Tobacco Firms. In fact, it was the possibility of claims by injured smokers, rather than state governments, that led us in Oregon Laborers to hold that the second AGC/Holmes factor weighed in favor of the tobacco defendants. Oregon Laborers, 185 F.3d at 966.
 
 
 [3]
 The Hospital Districts also submit that they should have standing because, as political subdivisions of the state, they are possessed of certain attributes of sovereignty. Nevertheless, they do not, and in fact could not, insist that any such quasi-sovereign status exempts them from the proximate cause requirement. Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 436 (3d Cir. 2000) (public hospitals cannot invoke quasi governmental standing to sue tobacco companies on behalf of their nonpaying patients without regard to proximate cause).
 
 
 [4]
 The Hospital Districts cite several other cases which purportedly recognize a special standing rule for health care providers. However, these cases concern constitutional standing, not RICO or antitrust standing. See NOW v. Scheidler, 510 U.S. 249, 255-56 (1994); Singleton v. Wulff, 428 U.S. 106, 113-18 (1976); Lee v. Oregon, 869 F. Supp. 1491, 1493-95 (D. Or. 1994), vacated on other grounds by 107 F.3d 1382 (9th Cir. 1997). Thus, they are inapposite.
 
 
 [5]
 We note, finally, that while the Hospital Districts, unlike the union trusts, apparently cannot avail themselves of a contract-based subrogation right to bring suit against the Tobacco Firms, this is irrelevant to the question of whether their antitrust and RICO claims fail for remoteness.
 
 
 [6]
 Wash. Rev. Code Ann. S 19.86.020 provides, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."
 
 
 [7]
 Wash. Rev. Code Ann. S provides, "[e]very contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is hereby declared unlawful."
 
 
 [8]
 Nor does Fisons Corp. require a different result. In Fisons Corp., the Supreme Court of Washington held that a physician could recover under the Washington Consumer Protection Act for damages he suffered resulting from a drug manufacturer's failure to warn him of the known dangers of a drug he prescribed to a patient. Fisons Corp., 858 P.2d at 1061. The physician in Fisons Corp. did not seek to recover for his expenses incurred in treating the patient who was harmed by the drug, but rather sought to recover for the injury to his reputation occasioned by the misprescription. Id. at 1061, 1063. Fisons Corp. thus provides no support for the Hospital Districts.
 
 
 [9]
 The Hospital Districts have failed to brief the district court's dismissal of their unjust enrichment, breach of special duty, and conspiracy claims. These claims are thus waived.
 
 
 [10]
 Defendants-Appellees' Motion to File Appendix of Unpublished Opinions is DENIED.